Opinion
 

 JEFFERSON (Bernard), J.
 

 JDefendant Henry Rubio was charged by information with robbery, in violation of Penal Code section 211. It was further alleged that defendant had used a firearm, to wit, a handgun, while committing the offense. Defendant entered a plea of not guilty. His trial was by jury.
 

 Defendant was found guilty of robbery in the first degree, and the jury determined that the firearm use allegation was true. The trial court found that the jury determination on firearm use was within the meaning of Penal Code section 12022.5. Probation was denied. Defendant was sentenced to state prison for the term prescribed by law. He has appealed from the judgment of conviction.
 

 The robbery occurred about 9:30 p.m. on December 9, 1973. Daniel McFetridge testified at trial that at this time he and his wife, Marina, were operating a small food market on Carson Street in Los Angeles County. McFetridge was sweeping the sidewalk in front of the store when he noticed a white Ford automobile in which there were several persons, parked nearby. Two men—one of them identified by McFetridge as defendant—got out of the car and started toward the market. McFetridge entered ahead of them and, from behind, felt something stuck in his ribs; defendant told him he was being held up.
 

 No one else was in the store, except Mrs. McFetridge, who was at the rear. Under compulsion by the robbers, McFetridge called: “Marina, come out here.” When Marina appeared, defendant’s companion grabbed her. McFetridge was ordered by defendant into the back
 
 *762
 
 storeroom, but refused to go. Defendant stated; “If you don’t go in, I’m going to shoot you.” McFetridge was afraid to go, and said: “If I’m going to be shot, I would rather be shot here than in the back room.”
 

 Defendant’s companion took Mrs. McFetridge to the front of the store where the cash register was located; he appeared to be carrying a knife. Mrs. McFetridge handed him what later was calculated to be $100, in small bills. Defendant’s companion stated: “Don’t be looking at me.” He then spoke to defendant, saying: “Let’s go. Forget it.”
 

 Defendant had ordered McFetridge to lie down on the floor. McFetridge had refused, but did finally kneel. Mrs. McFetridge also was ordered to the floor; through her fingers she could see defendant pressing a gun in her husband’s back. Defendant removed McFetridge’s wallet from the storeowner’s pocket.
 

 The two robbers conversed, partly in Spanish. It appeared to the McFetridges that defendant’s companion was attempting to persuade defendant to leave the premises. As the two men finally headed for the door, McFetridge saw the handgun held by defendant; he testified that it was a small-caliber silver-plated pistol with a four-inch barrel; he could see the rifling in the barrel.
 

 Defendant and his companion left the store, and the white Ford pulled away down Carson, tires screaming.
 

 McFetridge directed his wife to call the police. A customer arrived on a motorcycle, and McFetridge asked him to follow the white Ford. The customer did so, and soon returned to tell McFetridge where the car was; this information was relayed to the police.
 

 Deputy Sheriff Steven Hunt testified that he received word of the robbery and proceeded to the Carson Street on-ramp to the San Diego Freeway. There he found a white Ford, which had collided with a freeway barrier. Several bystanders advised Hunt of the direction in which the car’s occupants had fled, and this information was broadcast by the police.
 

 Deputies York and Sharkey were patrolling in the area when they heard the broadcast. They proceeded toward 213th Street, where it is possible to cross under the freeway from a wash. At Selwyn and 213th Street they observed four persons, including defendant, a male compan
 
 *763
 
 ion, and two girls. Defendant and his companion left the girls and started walking toward a flower bed located in front of a residence on the corner of the intersection. York and Sharkey testified that they called the four over to their patrol car. Defendant and his companion were searched, but nothing was found. The officers then went over to the flower bed, and discovered about $100 in currency down among the plants, as well as a shirt which was later identified as that worn by defendant during the robbery.
 

 The deputies then transported the four persons back to the McFetridge market, arriving there 15 or 20 minutes after the robbery had occurred. Deputy York brought the McFetridges out to the car, and they immediately identified defendant as one of the persons who had robbed them; they made a tentative identification of his companion as the other robber.
 

 At the close of the prosecution’s case, the trial court, at the request of the prosecutor, read to the jury from the court file the contents of two minute orders, one of September 16, 1975, when defendant failed to appear for trial, and one of February 9, 1976, when defendant, again in custody, made a motion for a trial date.
 

 Defendant testified to an alibi, and denied committing the robbery. He stated that he was at a funeral home on Avalon Boulevard in Wilmington from 8 p.m. to about 10 p.m. on the evening in question, paying his respects to a dead friend. A copy of the page which defendant signed in the visitor’s register at the funeral home was introduced as a defense exhibit.
 

 Defendant further testified that upon leaving the funeral home he accepted a ride with two men he did not know who told him they would take him to a bus stop, so that he could ride by bus back to Long Beach. The men, however, drove in a different direction, and began discussing a killing. Defendant became frightened, and finally managed to leave the automobile, although it was still in motion. He found himself in a dark deserted area near the freeway, and saw another man and two girls there. Shortly thereafter, the police came and took him into custody. Defendant also explained that he had failed to appear for trial because he was ill as the result of medication he had taken for a bad tooth. He became afraid of facing the consequences of failing to appear, and finally surrendered to the authorities on February 2, 1976.
 

 
 *764
 
 Defendant contends on this appeal that the trial court committed error when it took judicial notice of the minute orders of September 16, 1975, and February 9, 1976, and read their contents to the jury. He argues that by so doing, the trial court removed from the jury an issue which they were obligated to decide, i.e., whether defendant had fled prosecution due to consciousness of guilt.
 

 The record reveals that, at the request of the prosecution just before the prosecution rested, the trial court agreed to take judicial notice of the minute orders, and read their contents to the jury. What was read was: “Case is listed for trial. All.parties are on call, and thereafter defendant fails to appear
 
 without sufficient excuse.
 
 Bail forfeited. Bench warrant issued. No bail.” (Italics added.) (Sept. 16, 1975 minute order.) The second minute order read: “Bench warrant arrest. Trial setting. On defendant’s motion, trial is continued to April 1, 1976, at the hour of 9:00 o’clock a.m. in Department 111. Bail reset in the amount of $5,000. Remanded.” (Feb. 9, 1976 minute order.)
 

 The record further reveals that defense counsel had objected to this procedure, on the grounds that the evidence thus imparted to the jury was irrelevant. Defendant himself, after the minutes were read to the jury, took the witness stand and offered an explanation of his absence from trial on September 16, 1975.
 

 With respect to defendant’s absence from trial, the jury was instructed as follows: “Any matter that the court takes judicial notice of shall be accepted as fact by the jury.” The jury was also instructed in the language of CALJIC instruction No. 2.52, which states: “The flight of a person immediately after the commission of a crime, or after he is accused of a crime that has been committed, is not sufficient in itself to establish his guilt, but is a fact which,
 
 if proved,
 
 may be considered by you in the light of all other proved facts in deciding the question of his guilt or innocence.
 
 The weight to which such circumstance is entitled is a matter for the jury to
 
 determine.” (Italics added.)
 

 Evidence Code section 452 provides, in pertinent part: “Judicial notice may be taken of the following matters ... [¶] (d) Records of (1) any court of this state. . . .” Evidence Code section 457 provides that, upon request, a jury shall be instructed to accept as fact any fact of which the court takes judicial notice.
 

 
 *765
 
 Judicial notice has been characterized as a “substitute for formal proof.” (Witkin, Cal. Evidence (2d ed. 1966) § 150, p. 145.) That which is judicially noticed is accepted as fact, and cannot be controverted. Thus, it is a powerful tool to be employed by the trial court, especially when, under ordinary circumstances, the determination of fact is a jury function in a jury trial.
 
 [1]
 
 In the case at bench, judicial notice was employed to place in front of the jury, as an uncontrovertible fact, that defendant had absented himself from his first trial date “without sufficient excuse.”
 

 This factual determination, made by another judge in another proceeding, was made for reasons entirely unrelated to the case at bench. The trial court, on September 16, 1976, was following the procedure set forth in Penal Code section 1305, which provides, in relevant part: “(a) If, without sufficient excuse, the defendant neglects to appear ... for trial . . . the court
 
 must direct the fact to be entered upon its minutes
 
 and the undertaking of bail . . . must thereupon be declared forfeited, . . .” (Italics added.)
 

 Bail forfeiture, due to a defendant’s nonappearance, may be entered without any adversary proceeding directed toward establishing the
 
 reason
 
 for nonappearance. It is not the same as a factual finding made after contest. At a subsequent time the forfeiture may be contested on a motion to set it aside; it may be set aside because of defendant’s illness
 
 (People
 
 v.
 
 Wilcox
 
 (1960) 53 Cal.2d 651 [2 Cal.Rptr. 754, 349 P.2d 522]); and the decision to set it aside is addressed to the discretion of the trial court after hearing.
 
 (People
 
 v.
 
 Surety Ins. Co.
 
 (1976) 55 Cal.App.3d 197 [127 Cal.Rptr. 451].) The record does not tell us whether such a subsequent effort was made in the case at bench.
 

 At the trial, defense counsel objected to the admission of the contents of the minute orders as irrelevant to the issues. The objection to the entry in the minute orders—“without sufficient excuse”—that should have been made by defense counsel was that such entry was
 
 not
 
 the proper subject of judicial notice because it was inadmissible hearsay evidence, despite the fact that it appeared in a document, court minutes, that was a proper subject for judicial notice as a court record.
 

 
 *766
 
 Evidence Code section 1200 provides; “(a) ‘Hearsay evidence’ is evidence of a statement that was made other than by a witness while testifying at the hearing and
 
 that is offered to prove the truth of the matter stated.
 
 [¶](b) Except as provided by law, hearsay evidence is inadmissible. [¶] (c) This section shall be known and may be cited as the hearsay rule.” (Italics added.)
 

 In the instant case, the prosecution sought to prove that defendant had absented himself from trial,
 
 without excuse,
 
 and, inferentially, due to a consciousness of guilt. The statement in the court’s minutes was offered to prove that this was the case,
 
 i.e.,
 
 for the “truth of the matter stated.” Thus, it was a hearsay statement, made by a
 
 judge-declarant.
 
 (See
 
 People
 
 v.
 
 James
 
 (1969) 274 Cal.App.2d 608, 612 [79 Cal.Rptr. 182].)
 

 We know of no exception to the hearsay rule that would render admissible the judge’s statement, contained in a minute order, that “defendant fails to appear without sufficient excuse.” The fact that such statement was set forth in a document of which the court could take judicial notice does not render it admissible. As was stated in
 
 Day
 
 v.
 
 Sharp
 
 (1975) 50 Cal.App.3d 904, 914 [123 Cal.Rptr. 918], “[a] trial court may properly take judicial notice of the records of any court of record of any state of the United States. [Citations.] But, as is stated in Jefferson, California Evidence Benchbook (1972) Judicial Notice, section 47.3, at page 840: ‘Caveat:
 
 Limitations on judicial notice of court records.
 
 What is meant by taking judicial notice of court records? There exists a mistaken notion that this means taking judicial notice of the existence of facts asserted in
 
 every document
 
 of a court file, ... a court
 
 cannot
 
 take judicial notice of
 
 hearsay allegations
 
 as being true, just because they are part of a court record or file. . . .’ ” (Italics in original.)
 

 The Attorney General points out, correctly, that, since objection was not made to the introduction of the judicially noticed evidence in the trial court on the proper ground, it may not be raised on appeal as error. However, in the instant case, the error in admitting the statement “defendant fails to appear without sufficient excuse” in the minute orders was compounded by the instructions given to the jury, for which no objection had to be made below in order for the error to be considered on appeal.
 

 The jury was instructed that it should regard defendant’s unexcused absence from trial as an
 
 uncontrovertible
 
 fact. Also, the jury was instructed that it was its function to determine whether defendant had
 
 *767
 
 fled due to a consciousness of guilt. These instructions were inconsistent and confusing. Despite the giving of the flight instruction, the jury might well have understood that there was only one finding possible on the issue of flight, even though the instruction stated that it had to be
 
 proved,
 
 and that the jury was to determine whether it had been or not. We conclude that defendant’s contention of error with respect to the court’s taking judicial notice of its minutes is meritorious.
 

 Defendant also contends that he had insufficient notice of the prosecution’s intention to seek judicial notice of the court’s minutes in question. We note in this regard that Evidence Code section 453 provides that “[t]he trial court shall take judicial notice of any matter specified in Section 452 if a party requests it and: [¶](a) Gives each adverse party sufficient notice of the request, through the pleadings or otherwise, to enable such adverse party to prepare to meet the request; and [¶] (b) Furnishes the court with sufficient information to enable it to take judicial notice of the matter.”
 

 The record before us shows that, after defense counsel objected to the admission of the minutes, the trial judge stated: “Well, I’ve previously ruled that evidence of flight is admissible to show consciousness of guilt and absenting itself in a trial is flight.” That “previous ruling” appears to be unrecorded herein, as well as any information which would tell us at what point in time the defense first learned that the prosecution was seeking to have the trial court take judicial notice of this matter. In the face of these omissions from the record, we are unable to determine whether Evidence Code section 453 was followed in the case at bench, or, as defendant contends, the prosecution’s request was a surprise maneuver that defendant had insufficient time to meet.
 

 Defendant also makes the contention that the trial court erred in giving certain instructions to the jury. CALJIC instruction No. 2.15 was among those given. It reads: “The mere fact that a person was in conscious possession of recently stolen property is not enough to justify his conviction of the crime charged in . .. the information. It is, however, a circumstance to be considered in connection with other evidence. To warrant a finding of guilty, there must be proof of other conduct or circumstances tending of themselves to establish guilt. [H] [In this connection you may consider the defendant’s false or contradictory statements, if any, and any other statements he may have made with reference to the property. If a person gives a false account of how he acquired possession of stolen property this is a circumstance that may tend to show guilt.]1’
 

 
 *768
 
 Defendant argues, that the evidence was insufficient as a matter of law to warrant the giving of this instruction. We agree that it was erroneously given. Implicit in the applicability of CALJIC No. 2.15 (or, in the case of burglary and theft, when CALJIC Nos. 14.57 and 14.45 respectively would apply) is that the evidence has established
 
 possession
 
 by a defendant of stolen property; as is pointed out in Witkin, California Evidence (2d ed. 1966) section 371, subdivision (2), page 330, “[t]he defendant’s
 
 possession
 
 of stolen goods tends to identify him as the thief, . . .” (Italics added.)
 

 Some of the case law which has approved the giving of this instruction
 
 (e.g., People
 
 v.
 
 Mulqueen
 
 (1970) 9 Cal.App.3d 532, 542 [88 Cal.Rptr. 235];
 
 People
 
 v.
 
 Mosher
 
 (1969) 1 Cal.3d 379, 398 [82 Cal.Rptr. 379, 461 P.2d 659]) has involved evidentiary situations where defendant was apprehended while in possession of incriminating evidence that tended to link him to the crime charged. In the case at bench, the evidence revealed that the arresting police officers had discovered $100, presumably the fruits of the robbery, scattered in a flower bed located where defendant had just been standing. Under these circumstances, defendant’s possession of this money could not be presumed to justify the giving of CALJIC No. 2.15. The jury was never instructed, by CALJIC No. 1.24, or otherwise, as to what constituted “possession” by the defendant. In the absence of an instruction defining possession,
 
 [2]
 
 the jury must have assumed that the evidence established, without dispute, defendant’s possession of stolen property. In actuality, however, this was an open question. The giving of CALJIC No. 2.15 was also improper because its second paragraph assumes that there has been evidence adduced concerning statements made by defendant explaining his possession; this record contains none.
 

 Defendant also takes issue with the giving of CALJIC No. 2.03, which reads: “If you find that before this trial the defendant made false or deliberately misleading statements concerning the charge upon which he is now being tried, you may consider such statements as a circumstance tending to prove a consciousness of guilt but it is not sufficient of itself to prove guilt. The weight to be given to such a circumstance and its significance, if any, are matters for your determination.”
 

 
 *769
 
 The record shows that defendant testified to rather involved and unusual circumstances in attempting to explain how he happened to be at the location where he was arrested; on cross-examination, he was asked if he had told a similar story to one of the investigating police officers; he replied that he had. Officer Castorina, whom defendant identified as the officer to whom he had made prior consistent statements, testified at trial but was not asked about defendant’s statements to him.
 

 In
 
 People
 
 v.
 
 Albertson
 
 (1944) 23 Cal.2d 550, 581 [145 P.2d 7], it was observed (in a concurring opinion) that “[f]alse statements by a defendant to those investigating the commission of the crime are admissible if they indicate consciousness of guilt. . . .” The same opinion in
 
 Albertson,
 
 however, points out that, “[b]efore evidence of false statements by a defendant may be received, the court must determine whether the falsehood is one that may be reasonably construed as implying such an admission”
 
 (id.,
 
 at p. 582) because of the danger of prejudice to the defendant. In
 
 People
 
 v.
 
 Showers
 
 (1968) 68 Cal.2d 639 [68 Cal.Rptr. 459, 440 P.2d 939], defendant explained to the police that he was searching for lost money in an ivy'patch where heroin was found; the court observed that such evidence was admissible because “[f]alse statements regarding incriminating circumstances constitute evidence which may support an inference of consciousness of guilt.”
 
 (Id.,
 
 at p. 643.)
 

 The giving of CALJIC No. 2.03 is justified only if there exists evidence that defendant prefabricated a story to explain his conduct. This instruction is
 
 not
 
 applicable in the situation where a defendant makes an explanation of behavior to the police which is
 
 consistent
 
 with his self-serving testimony at trial that conflicts with the prosecution’s evidence before the jury. In such a case, the instruction of necessity casts specific doubt on a defendant’s credibility as a witness and singles out
 
 defendant’s testimony
 
 as subject to more particular scrutiny than that attached to prosecution witnesses.
 

 We hold that the evidentiary record must contain more of a factual basis than the one in the instant case to justify the giving of CALJIC No. 2.03. Here, the only reference to any statement of defendant at all was contained in his cross-examination, and it simply established that he had stated
 
 before
 
 what he was
 
 now
 
 testifying to at trial. The giving of CALJIC No. 2.03 under these circumstances constituted error.
 

 
 *770
 
 Finally, defendant contends that the trial court committed error by failing,
 
 sua sponte, to
 
 give the standard CALJIC instruction No. 4.50, on alibi, even though defendant’s trial counsel had not requested the instruction. CALJIC No. 4.50 reads: “The defendant in this case has introduced evidence tending to show that he was not present at the time and place of the commission of the alleged offense for which he is here on trial. If, after a consideration of all the evidence, you have a reasonable doubt that the defendant was present at the time the crime was committed, he is entitled to an acquittal.”
 

 Defendant argues that had this instruction been given, it would have had an ameliorative effect insofar as the other assertedly incorrect instructions which had been given were concerned. Appellate counsel for the defendant concede that the decisional law has not expanded the concept of
 
 sua sponte
 
 instructions to include an instruction on the defense of
 
 alibi,
 
 but contend that the general trend of the law, as set forth in the more recent holdings of the California Supreme Court, dictates a change in the prevailing rule.
 

 The prevailing rule was set forth in
 
 People
 
 v.
 
 Whitson
 
 (1944) 25 Cal.2d 593, 603 [154 P.2d 867], to the effect that, in the absence of a specific request for an alibi instruction, the trial court was under no duty to give such instruction. The rationale for this rule was that alibi evidence was considered to be on the same level as all other evidence presented to the trier of fact, and that it was deemed sufficient to give the general instructions applicable to
 
 all
 
 evidence. This rule has been reiterated in the case law since
 
 Whitson.
 
 Thus, in
 
 People
 
 v.
 
 Johnson
 
 (1967) 253 Cal.App.2d 396, 401 [61 Cal.Rptr. 225], it was said: “The contention has frequently been made that when the defense is an alibi, an instruction thereon is mandatory, but it is the rule in California that although substantial alibi evidence may be given by the defense, in the absence of request for a specific charge on the subject, it is not the duty of the trial court to give it.” (Accord,
 
 People
 
 v.
 
 Branch
 
 (1962) 205 Cal.App.2d 688, 691 [23 Cal.Rptr. 342];
 
 People
 
 v.
 
 Hoffmann
 
 (1970) 7 Cal.App.3d 39, 47 [86 Cal.Rptr. 435].)
 

 The general principles concerning the giving of adequate jury instructions in a criminal case have been well summarized in
 
 People
 
 v.
 
 Iverson
 
 (1972) 26 Cal.App.3d 598, 604-605 [102 Cal.Rptr. 913], as follows: “It is settled that in criminal cases, even when not requested, the court must instruct on the general principles of law relevant to the issues raised by the evidence. [Citations.] The general principles of law
 
 *771
 
 governing the case are those principles closely and openly connected with the evidence adduced before the court which are necessary for the jury’s proper consideration of the case. [Citations.]
 
 At a minimum, it is the court’s duty to ensure the jury is adequately instructed on the law governing all elements of the case submitted to it to the extent necessary for a proper determination in conformity with the applicable law.”
 
 (Italics added.)
 

 The requirement that jury instructions be given, whether requested or not, on principles “closely and openly connected” with the pertinent evidence is not a new one; it was espoused in
 
 People
 
 v.
 
 St. Martin
 
 (1970) 1 Cal.3d 524, 531 [83 Cal.Rptr. 166, 463 P.2d 390], and reiterated in
 
 People
 
 v.
 
 Sedeno
 
 (1974) 10 Cal.3d 703 [112 Cal.Rptr. 1, 518 P.2d 913]. In
 
 Sedeño,
 
 the requirement was specifically extended to defenses; it was said: “The duty to instruct,
 
 sua sponte,
 
 on general principles closely and openly connected with the facts before the court also encompasses an obligation to instruct on defenses, . . .”
 
 (Sedeno, supra,
 
 10 Cal.3d 703, at p. 716.) And in
 
 People
 
 v.
 
 Rincon-Pineda
 
 (1975) 14 Cal.3d 864, 885 [123 Cal.Rptr. 119, 538 P.2d 247], the California Supreme Court spoke of the “residual” discretion of the trial court to clarify, on its own motion, any confusion which might exist due to conflicting evidence or instructions.
 

 The duty to instruct on defenses,
 
 sua sponte,
 
 was discussed in the recent case of
 
 People
 
 v.
 
 Stewart
 
 (1976) 16 Cal.3d 133, 140 [127 Cal.Rptr. 117, 544 P.2d 1317], in the following terms: “[Substantial authority suggests that the court was under an affirmative duty to give,
 
 sua sponte,
 
 a correctly phrased instruction on defendant’s theory.” The
 
 Stewart
 
 court also remarked that “ ‘. . . [a] defendant has a constitutional right to have the jury determine every material issue presented by the evidence, ...’ [Citation.] An erroneous failure to instruct on an affirmative defense relied upon by the defendant constitutes a denial of this right which ‘is in itself a miscarriage of justice. .. .’ [Citations.]”
 
 (Stewart, supra,
 
 16 Cal.3d 133, at p. 141.)
 

 The Courts of Appeal have differed sharply on the necessity of
 
 sua sponte
 
 instructions on defenses. For example, in
 
 People
 
 v.
 
 Grantham
 
 (1972) 26 Cal.App.3d 661, 665 [103 Cal.Rptr. 262], the holding was that the trial court had a
 
 sua sponte
 
 duty to give an instruction on the only available defense, which was entrapment. But the
 
 Grantham
 
 court’s ruling was criticized and specifically rejected in
 
 People
 
 v.
 
 Pijal
 
 (1973) 33 Cal.App.3d 682, 692 [109 Cal.Rptr. 230], as not reflective of the prevailing law.
 

 
 *772
 
 in the case at bench, defendant asserted an alibi. As was observed in
 
 People
 
 v.
 
 Carmen
 
 (1951) 36 Cal.2d 768, 773 [228 P.2d 281], “
 
 [h]owever incredible the testimony of a defendant may be he is entitled to an instruction based upon the hypothesis that it is entirely true.'
 
 ” (Italics in original.) It is for the jury, after proper instructions, to sort out the truth or falsity of a defendant’s claims.
 

 In our view, the “constitutional” right to a jury determination of every material issue, as mandated by the California Supreme Court in
 
 Stewart,
 
 must include the right to have the jury adequately instructed not only on the theory of the prosecution’s case but on the defense theories as well. When the defense is alibi—as it was here—and particularly when it is the
 
 only
 
 defense relied upon by a defendant before the jury, we conclude that the trial court is presently under an affirmative duty,
 
 sua sponte,
 
 to ensure that a proper alibi instruction is given. We believe that
 
 Stewart
 
 and
 
 Sedeno
 
 have overruled, sub silentio, the prior law that an alibi defense does not require a
 
 sua sponte
 
 instruction. Such an instruction would have been particularly helpful in the case at bench, where the omission of such an instruction compounded the other instructional errors that were made.
 

 Defendant also contends that for trial defense counsel to fail to request an instruction pertaining to defendant’s defense, as in the present case, results in a constitutionally inadequate representation to defendant in the trial court. Under the circumstances presented here, we reject this contention as lacking in merit. The omission does not indicate any lack of knowledge on the part of trial counsel but rather a choice of tactics. It seems likely that defense counsel simply chose to emphasize other aspects of the facts and the law than his client’s explanation of the alibi defense. In
 
 People
 
 v.
 
 Floyd
 
 (1970) 1 Cal.3d 694, 709 [83 Cal.Rptr. 608, 464 P.2d 64], the significance of trial strategy as it relates to inadequate representation was discussed in this language: “It is not sufficient [to achieve reversal on this ground] to allege merely that the attorney’s tactics were poor, or that the case might have been handled more effectively. [Citations.] [H] Rather, the defendant must affirmatively show that the omissions of defense counsel involved a critical issue, and that the omissions cannot be explained on the basis of any knowledgeable choice of tactics.” Since we have concluded in the case at bench that defense counsel’s failure to request an alibi instruction may very well have constituted a tactical choice, we decline to find the representation constitutionally inadequate.
 

 
 *773
 
 We come to the final issue of whether, in the case before us, the accumulated errors we have perceived in the conduct of this trial necessitate reversal of defendant’s conviction. A review of the record establishes that these accumulated errors, considered together, took away from the defendant all possibility and opportunity for the jury to make a fair and just appraisal of his defense. A defendant is entitled to a trial on “relevant, nonprejudicial evidence”
 
 and
 
 to jury instructions that will enable the jury to appraise defendant’s defense fairly and impartially. (See
 
 People
 
 v.
 
 Guerrero
 
 (1976) 16 Cal.3d 719, 730 [129 Cal.Rptr. 166, 548 P.2d 366].)
 

 The judgment appealed from is reversed.
 

 Kingsley, Acting P. J., and Dunn, J., concurred.
 

 A petition for a re hearing was denied July 27, 1977, and respondent’s petition for a hearing by the Supreme Court was denied September 8, 1977.
 

 [1]
 

 Evidence Code section 457 provides: “If a matter judicially noticed is a matter which would otherwise have been for determination by the jury, the trial court may, and upon request shall, instruct the jury to accept as a fact the matters so noticed.”
 

 [2]
 

 CALJIC No. 1.24 reads: “Within the meaning of the law, a person is in possession of an article, object or thing when it is under his dominion and control and to his knowledge either is carried on his person or is in his presence and custody, or, if not on his person or in his presence, the dominion and control thereof is immediate, accessible, and exclusive to him ....’’