[Crim. No. 15573. First Dist., Div. Three. Feb. 23, 1978.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHN WESLEY JOHNSON, Defendant and Appellant.

## COUNSEL

Paul N. Halvonik, State Public Defender, under appointment by the Court of Appeal, Clifton R. Jeffers, Chief Assistant State Public Defender, Michael G. Millman and Carol Jean Ryan, Deputy State Public Defenders, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, William D. Stein and David Schneller, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**FEINBERG, J.**—Appellant was charged with murder (Pen. Code, § 187) and convicted by a jury of voluntary manslaughter (Pen. Code, § 192, subd. 1). We have concluded that the conviction should stand but that the portion of the judgment declaring appellant suffered a prior conviction must be reversed for failure to fully advise appellant of his rights in regard to admission of a prior felony conviction.

Appellant was married to the victim, Gertie McFall Johnson, whose body was found buried in the basement of the house where the couple lived with their two-year-old son. Appellant had returned to the residence on October 9, 1975, after his release from county jail. Gertie was last seen on October 20, 1975, and on October 25, 1975, her grave was discovered by her brothers, Curtis and Sherman McFall.

*Was appellant properly found
competent to stand trial?*

On December 18, 1975, the public defender, Mr. Meyer, requested the court to suspend proceedings under Penal Code section 1368 to determine if appellant was competent to stand trial because appellant refused to see him or talk to him.[1] The court ordered criminal proceedings suspended, appointed Doctors Joseph Davis and George Ponomareff to examine appellant, and continued the matter to January 2 for receipt of the doctors' reports. Appellant protested, stating that he would not see any doctors or work with his attorney and that if the attorney were dismissed from the case, he thought he could handle the case himself. The court replied that even if all that were demanded was that appellant represent himself, he would still have to determine competency of the appellant to represent himself.

---

[1]Penal Code section 1368 reads:

"(a) If, during the pendency of an action and prior to judgment, a doubt arises in the mind of the judge as to the mental competence of the defendant, he shall state that doubt in the record and inquire of the attorney for the defendant whether, in the opinion of the attorney, the defendant is mentally competent. If the defendant is not represented by counsel, the court shall appoint counsel. At the request of the defendant or his counsel or upon its own motion, the court shall recess the proceedings for as long as may be reasonably necessary to permit counsel to confer with the defendant and to form an opinion as to the mental competence of the defendant at that point in time.

"(b) If counsel informs the court that he believes the defendant is or may be mentally incompetent, the court shall order that the question of the defendant's mental competence is to be determined in a hearing which is held pursuant to Sections 1368.1 and 1369. If counsel informs the court that he believes the defendant is mentally competent, the court may nevertheless order a hearing. Any hearing shall be held in the superior court.

"(c) Except as provided in Section 1368.1, when an order for a hearing into the present mental competence of the defendant has been issued, all proceedings in the criminal prosecution shall be suspended until the question of the present mental competence of the defendant has been determined.

"If a jury has been impaneled and sworn to try the defendant, the jury shall be discharged only if it appears to the court that undue hardship to the jurors would result if the jury is retained on call.

"If the defendant is declared mentally incompetent, the jury shall be discharged."

Dr. Davis reported by letter that appellant had refused to talk to him and, therefore, he was unable to give an informed opinion as to whether appellant was insane pursuant to section 1368. He concluded by observing: "However, if he reacts to his counsel in the same manner that he reacted to me it can be anticipated that he will not be able to cooperate in the preparation of his defense." Dr. Ponomareff reported much the same thing, although he also noted that appellant's Air Force record showed a schizophrenic psychosis three years ago.

On January 2, 1976, the court stated that his initial feeling was that appellant's reaction was nothing more than antagonism toward counsel but wasn't sure after reading Dr. Ponomareff's letter. He then stated: "The Court finds the Defendant incompetent to proceed with further criminal proceedings. He is ordered to be committed to Atascadero Hospital for treatment." Appellant then asked why he was going to Atascadero and the court answered: "I don't think that you are in any amenable condition to proceed with criminal proceedings." The appellant stated that he didn't want the attorney to represent him and that the Air Force evaluations mentioned by Dr. Ponomareff had no bearing on the case. Appellant repeated his reason for not wanting the attorney, and the court stated: "I will vacate my previous order and permit the Defendant to institute proceedings pursuant to Section 1368. Put this matter over for two or three days in order to investigate it further." By January 21, 1976, appellant had new counsel and had indicated his willingless to cooperate with counsel and proceed to trial. The court found appellant competent and reinstated criminal proceedings.

■ Appellant argues that once having orally pronounced a finding of incompetence, the court was required to commit him until such time as the superintendent of the medical facility to which he was committed certified that he had regained competence. (See Pen. Code, § 1370.) Respondent likens this case, however, to one in which a court has orally sentenced a defendant. In such event, a court may vacate its oral sentence to correct judicial error if the order has not been entered in the court minutes nor defendant restrained under it. (*People* v. *Thomas* (1959) 52 Cal.2d 521, 529-536 [342 P.2d 889]; *People* v. *Hartsell* (1973) 34 Cal.App.3d 8, 13 [109 Cal.Rptr. 627].)

Almost immediately upon announcing its finding of incompetency, the court realized further investigation was necessary. To the extent that the court concluded evidence of incompetency at that point was insufficient, it was correct. A finding of incompetency solely on evidence of a

defendant's refusal to cooperate would be unwarranted. (See *People v. Huffman* (1977) 71 Cal.App.3d 63, 70 [139 Cal.Rptr. 265].) Although Dr. Ponomareff considered that further investigation was indicated because of a past history of psychosis, the only evidence of present incompetence was an unwillingness to cooperate and appellant explained this unwillingness as due to his lack of confidence in the public defender.

The court was correct in concluding on January 2 that there was insufficient evidence of incompetency and that he was not bound by his pronouncement to the contrary only moments before. Further developments then dispelled the doubt about incompetence that had originally prompted the court to institute proceedings under Penal Code section 1368 since appellant was willing to cooperate with his new attorney. *People v. Renteria* (1960) 183 Cal.App.2d 548 [6 Cal.Rptr. 640], relied upon by appellant, is inapposite. In *Renteria,* the court expressed doubt as to defendant's present mental competence, orally ordered a hearing and without dispelling that doubt, vacated that order without determining competency. Here, to the contrary, there was evidence taken and a finding of competency supported by the evidence. (See *People v. Hays* (1976) 54 Cal.App.3d 755, 759-760 [126 Cal.Rptr. 770].)

> *Was appellant denied effective assistance of*
> *counsel because his trial attorney conceded*
> *to the admission of inadmissible evidence on*
> *the victim's fear of appellant?*

Before trial began, the court asked counsel for any further argument they wished to advance on the admissibility of evidence of threats. Defense counsel answered that all they were asking was that statements as to past events which caused the victim's state of mind be excluded and referred to the case of *People v. Hamilton* (1961) 55 Cal.2d 881 [13 Cal.Rptr. 649, 362 P.2d 473]. The prosecutor stated that evidence of the victim's state of mind shortly before the killing would be relevant and that hearsay statements of the state of mind would be admissible under Evidence Code section 1250. Thereafter, the prosecutor questioned various witnesses, without objection, as to whether the victim had expressed a fear of appellant.

▪ The hearsay evidence of the victim's fear was inadmissible under Evidence Code section 1250. This section permits hearsay statements of a declarant's state of mind only when the "state of mind (1) is itself an issue in the case, or (2) is relevant to prove or explain acts or conduct of

the declarant." (*People* v. *Ireland* (1969) 70 Cal.2d 522, 529 [75 Cal.Rptr. 188, 450 P.2d 580, 40 A.L.R.3d 1323].) Gertie's state of mind was not *itself* an issue of the case nor did her fear explain any of Gertie's acts or conduct. Respondent suggests that the fact Gertie feared appellant would tend to prove that she would not have provoked appellant to act in the heat of passion. Appellant did not contend that he had acted in the heat of passion. Nor did the prosecutor argue that her fear negated conviction of the lesser charge. He argued only that it showed that appellant killed Gertie. As the evidence was inadmissible hearsay, respondent's suggestion that the evidence was relevant to show the identity of the assailant under the general definition of relevancy of Evidence Code section 210 is without merit.

■ It is clear that no tactical consideration prompted defense counsel's concession of admissibility but, rather, a misreading of *People* v. *Hamilton, supra,* 55 Cal.2d 881, upon which counsel relied to argue that past conduct of appellant which produced the fear would be inadmissible. While counsel's position was mistaken, the mistake did not deny appellant the effective assistance of counsel to which he is entitled under the United States Constitution. The effective counsel required by due process "is not *errorless* counsel; rather, it is counsel 'reasonably likely to render, *and rendering* reasonably effective assistance.' [Citations.]" (*In re Saunders* (1970) 2 Cal.3d 1033, 1041 [88 Cal.Rptr. 633, 472 P.2d 921].) Cases involving the failure to object to inadmissible evidence have required of the appellate courts an assessment of the role the evidence had in convicting the defendant. Where it has played a crucial role, reversal has followed. (See, e.g., *People* v. *Dorsey* (1975) 46 Cal.App.3d 706 [120 Cal.Rptr. 508], evidence of defendant's wife, inadmissible as a confidential communication between husband and wife, was the only testimony other than accomplice testimony; *People* v. *Williams* (1971) 22 Cal.App.3d 34 [99 Cal.Rptr. 103], inadmissible hearsay supplied a motive for a seemingly random killing, the defense for which was unconsciousness due to a psychomotor epileptic attack; *People* v. *Coffman* (1969) 2 Cal.App.3d 681, 691 [82 Cal.Rptr. 782], evidence generated by an illegal search transformed a reasonable probability of conviction into virtual certainty.)

Here, in contrast, the fact that Gertie was afraid of appellant was only one of many circumstances that tended to show her death was by his hands. She was buried in his home during a period when he was there; blood stains of her type blood were found on his clothing; he made inconsistent remarks as to the time and reason for her disappearance; he

remarked about the possibility of concealing a body by burial; he quarreled with her the night before her disappearance. Furthermore, if fear could not be inferred from the circumstances otherwise present, it could be inferred that the couple was not on good terms. Not only did they quarrel, but Gertie spent nights away from home despite the fact that her husband had recently returned from jail. The circumstances were overwhelming that appellant killed her. Evidence of the victim's fear did the defense no harm whatsoever for, in fact, appellant was convicted of voluntary manslaughter rather than of murder as charged.

*Was appellant prejudiced by misconduct on the part of the prosecutor in cross-examining witnesses?*

■ The trial court permitted the prosecution to ask appellant if he had been in jail with the Zebra defendants, reasoning that there had already been testimony on the point. Appellant correctly argues that the court's ruling was erroneous. The fact that appellant happened to be incarcerated in the same facility as the Zebra killers was of no relevance to any issue in the case and the prosecutor's question was beyond the scope of direct examination. The record itself, however, refutes the argument that appellant was prejudiced by an implication that he was a confederate of the Zebra killers. The record reveals that appellant was simply in the same facility; the jury could not have been misled.

■ Appellant also contends that it was prejudicial misconduct for the prosecutor to ask appellant if he had made a statement which had earlier been ruled inadmissible by the court. Out of the presence of the jury, the court had heard evidence of statements made by appellant when he was confronted by the McFall brothers upon their discovery of the body. The court ruled that statements made after Curtis McFall pointed a gun at appellant were not voluntary and would be excluded for all purposes. This included in particular a statement of appellant, when told that there was someone buried in the basement, that it wasn't Gertie. Despite the court's ruling, the prosecutor cross-examined on the very statement that had been ruled inadmissible.

A prosecutor who improperly cross-examines a defendant in order to place inadmissible prejudicial evidence before the jury is guilty of misconduct. (*People* v. *Evans* (1952) 39 Cal.2d 242, 248-249 [246 P.2d 636]; see Witkin, Cal. Criminal Procedure(1963) Trial § 439, p. 439.) Improper

questions that violate a previous ruling by the trial court are particularly inexcusable. (*People* v. *Glass* (1975) 44 Cal.App.3d 772, 781-782 [118 Cal.Rptr. 797].)

A prompt and complete explanation to the jury that questions are not evidence or even suggestions that the alleged admissions were made might well have cured the prejudice of the questions. (See *People* v. *Pierce* (1970) 11 Cal.App.3d 313, 322 [89 Cal.Rptr. 751].) The fact that no admonition was given in the instant case may not have been entirely the fault of defense counsel. Immediately prior to the objectionable question, counsel objected to appellant's being directly asked what appellant had said to Curtis on the ground of the court's previous ruling. A discussion was held off record, the prosecutor withdrew his question and rephrased it without interference from court or defense counsel. Whether the court had ruled against defense counsel or had approved the rephrasing cannot be determined.

■ "[D]espite absence of an objection, misconduct will cause reversal if it caused a miscarriage of justice, that is, if there is a reasonable probability that it shifted the verdict." (*People* v. *Smith* (1973) 33 Cal.App.3d 51, 71 [108 Cal.Rptr. 691]; see *People* v. *Hamilton* (1963) 60 Cal.2d 105, 121 [32 Cal.Rptr. 4, 383 P.2d 412].) Here, as discussed in connection with the possible prejudice from hearsay statements of the victim's fear of appellant, we conclude that the case against appellant consisted of a web of circumstances so strongly convincing of guilt that the result would not have been different had the jury not had before it the implication, denied by appellant, that an incriminating remark had been made by him.

*Was appellant sufficiently advised of the constitutional rights waived by an admission of a prior felony conviction?*

■ The California Supreme Court has held that an accused must be advised of, and expressly waive, his privilege against self-incrimination, his right to trial by jury and his right to confront his accusers before his admission that he has suffered prior felony convictions may be accepted by the court. The accused must also be advised of the penalties he will incur as a result of his admission. (*In re Yurko* (1974) 10 Cal.3d 857, 863-864 [112 Cal.Rptr. 513, 519 P.2d 561].) The only part of this advice that appellant contends was not given was an explanation of his privilege against self-incrimination.

In the case at bench, the prosecutor and defense counsel explained to defendant, at the court's request, that the prosecution would have to prove that the prior actually occurred if he did not admit it. The court then asked: "Do you understand that you're entitled to have the prosecution prove the prior? You're entitled to confront the witnesses that are—that might be called or to look at the documents that might be called and that you're giving up the right to have the jury determine that issue if you acknowledge the prior?"

In a similar situation where the defendant specifically waived trial and admitted an alleged prior conviction, after having been advised that the prosecution would have to prove the conviction beyond a reasonable doubt by competent evidence, the court in *People* v. *Lizarraga* (1974) 43 Cal.App.3d 815 [118 Cal.Rptr. 208] (hg. den. 2/26/75) held that "[b]y telling defendant that he had a right to demand a trial at which the prosecution would be required to prove the prior conviction, the trial judge effectively conveyed the essential message of the privilege against self-incrimination." (At p. 819.)

With due respect to that able court, we disagree.

The *Lizarraga* court distilled the case law as follows: "We review the trial court's recitation in the light of the general rule that an intelligent and effective admission of a prior conviction does not occur unless the trial court 'specifically and expressly' informs a defendant that his admission is a waiver of three constitutional privileges—the privilege against self-incrimination, the right to trial by jury and the right to confront one's accusers. (*In re Yurko,* 10 Cal.3d 857, 861-863 [112 Cal.Rptr. 513, 519 P.2d 561]; *In re Foss,* 10 Cal.3d 910, 930 [112 Cal.Rptr. 649, 519 P.2d 1073].) Additionally, the court must inform the defendant of the prior conviction's effect upon his sentence and parole eligibility. (*In re Yurko, supra,* 10 Cal.3d at p. 864.)

" . . . . . . . . . . . . . . . . . . . .

"The *Yurko* and *Foss* decisions had their antecedents in *Boykin* v. *Alabama,* 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709], and *In re Tahl,* 1 Cal.3d 122 [81 Cal.Rptr. 577, 460 P.2d 449]. The requirement for *specific* and *express* enumeration was articulated in *Tahl,* 1 Cal.3d at page 132. We do not interpret the *Tahl* opinion as an ineluctable demand for literal constitutional terminology. Significantly, the *Tahl* opinion permits avoidance of 'the recitation of a formula by rote' and calls for 'direct

evidence' that the accused was aware of his rights. (*Id.* at p. 132.) We interpret *Tahl* to permit recitation in nonlegalistic terms comprehensible to a layman unschooled in legalistic verbiage, if only it is specific. The recitation suffices if it communicates to the defendant the essential character of the constitutional privileges in lay language, provided the message does not require resort to inference." (At pp. 817-818.)

We agree with the analysis. Having said so, however, we are at a loss to understand how telling a defendant that he has the right to a trial on the issue of the prior conviction, and that the prosecution has the burden of proving the prior conviction beyond a reasonable doubt, also tell him that he has a privilege against self-incrimination, which he waives, if he admits the prior. For all that appears in the record, the defendant didn't even know that he had such a privilege, much less that he waived it.

At best, it may be asserted that the defendant has *inferentially* waived his privilege. But, as the *Lizarraga* court itself observed, *inference* may not be resorted to in order to find that the defendant has been advised of his rights.

In *People* v. *Levey* (1973) 8 Cal.3d 648 [105 Cal.Rptr. 516, 504 P.2d 452], the case was submitted to the trial court on the transcript of the preliminary examination. The defendant was advised of his right to a jury trial and his right of confrontation. He waived them. He neither waived nor was he advised of his privilege against self-incrimination.

The Supreme Court in reversing the judgment observed rather forcefully that "We do not perceive how we can state and restate the rule with greater clarity than we have undertaken in . . . three successive decisions. The trilogy leaves no doubt that to establish a defendant was advised of and waived his constitutional rights in pleading guilty there must be a specific and express showing on the face of the record that the rights were made known to and waived by him, and that mere inference, no matter how plausibly drawn from the evidence, does not suffice." (Fn. omitted.) (*People* v. *Levey, supra,* at p. 653.)

It may be argued that *Levey* involved a so-called "slow plea of guilt" whereas the case before us involves only the admission of a charged prior; not a plea. But the Supreme Court rejected this distinction in holding that the same panoply of rights that must be made known to and waived by a defendant who enters a guilty plea must be made known to and waived by a defendant who admits a charged prior conviction. By

"express and specific admonitions . . . . [t]he accused must be told that an admission of the truth of an allegation of prior convictions waives, as to the finding that he has indeed suffered such convictions, the same constitutional rights waived as to a finding of guilt in case of a guilty plea." (*In re Yurko, supra,* 10 Cal.3d at p. 863.)

Although we agree that the admission of the prior constitutes reversible error, appellant's remedy is to have only that part of the judgment declaring the existence of the prior felony conviction reversed. (*People* v. *Fisk* (1975) 50 Cal.App.3d 364, 372-373 [123 Cal.Rptr. 414].)

The judgment convicting defendant of voluntary manslaughter is affirmed. That part of the judgment declaring the existence of appellant's prior felony conviction is reversed. The case is remanded to the trial court with directions to resentence appellant, after a limited new trial, on the issue of the prior conviction.

Scott, Acting P. J., and King, J.,* concurred.

*Assigned by the Chairperson of the Judicial Council.