[Crim. No. 32842. Second Dist., Div. Five. Feb. 16, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
DIEGO MANUEL PIMENTEL, Defendant and Appellant.

582

## COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Charles M. Sevilla, Chief Assistant State Public Defender, and Victor Salerno, Deputy State Public Defender, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Roy C. Preminger and Linda C. Johnson, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**STEPHENS, Acting P. J.**—By information defendant was charged in count I with robbery in violation of Penal Code section 211, and in count II with assault with a deadly weapon in violation of Penal Code section 245, subdivision (a). A prior felony conviction was also alleged. Defendant admitted the prior conviction and, after a jury trial, was found not guilty of count I and guilty of count II. The court found the admitted prior conviction to be true and defendant was sentenced to imprisonment in the state prison. Defendant appeals the judgment of conviction and the finding on the prior conviction.

### FACTS

At approximately 2 p.m. on February 21, 1977, Reynaldo Luis Rivera went with an acquaintance to the El Patio Bar in the City of Pomona. Rivera drove his own car and, upon arrival at the El Patio, parked it adjacent to the building. He got out of the car, locked the driver side door, and mistakenly assumed that his passenger had locked the other door.

Rivera and his guest sat at a table in the El Patio, each had a beer and the guest left. Rivera stayed for an additional 20 minutes during which he had 3 more beers. While in the El Patio, Rivera went to the bathroom and enroute thereto, he noticed defendant and two others sitting in a patio area just behind the bar. Rivera had not seen defendant before.

After being in the El Patio for approximately one-half hour, Rivera left the building and went to his car. He again saw defendant and the two others, sitting on the hood of a car that was parked approximately 15 feet from his own car. Rivera entered his car and put the key in the ignition switch. At that moment, a man entered the car through the passenger door, put his elbow on Rivera's throat, and began stabbing him with a small knife. The man said in Spanish, "Give me your wallet or I'll stab you to death." Rivera was stabbed from 9 to 11 times, during which he got a close look at the assailant's face. Rivera gave the man his wallet which contained $110, and the man left the car.

Immediately after the stabbing, Rivera drove to the nearby home of his former father-in-law for help. He found no one home and the doors locked. A neighbor noticed the weakened Rivera and summoned the police and paramedics. When they arrived Rivera was treated by the paramedics and questioned by the police. He gave them a description of his assailant and was taken to a hospital. One of the police officers to whom Rivera gave the description went with the other officers to El Patio Bar. There they interrogated those patrons of the bar who fit the description given by Rivera, one of whom was defendant. The officer who questioned defendant noticed that he had what appeared to be blood on his clothing and face. A search revealed that defendant was not carrying a weapon. The officers took defendant, with his consent, to the hospital where Rivera was being treated. Rivera positively identified defendant as the man who had stabbed him and taken his wallet. The defendant was then taken to police headquarters and booked. Neither Rivera's wallet nor money was found in defendant's possession.

At trial, evidence indicated that defendant was in the El Patio Bar at approximately the same time Rivera arrived there; that defendant was absent from the bar at approximately the time Rivera was attacked; and that defendant returned to the bar from one to one and one-half hours after his absence was noticed. Evidence of blood comparison analysis indicated that the blood taken from defendant's clothing was of the same type as that taken from the victim, Rivera.

Defendant testified that he arrived at the El Patio Bar at 3 or 3:30 p.m.; that he called his girl friend at 4 p.m. to come pick him up; that he stayed inside the building until shortly after 4 p.m. when he heard a horn honk outside; that he then went outside and saw Rivera; that Rivera, bleeding profusely, grabbed defendant by the shirt and would not let go; and that defendant pushed Rivera away and went back into the bar where he

stayed until the police arrived. Defendant's girl friend testified that she received a telephone call from defendant at 4 p.m., during which defendant asked her to pick him up at the El Patio Bar. She testified that she drove slowly past the El Patio Bar about 15 minutes later, honked her horn, did not see defendant but did not stop because she saw some drunks at the side of the building. She returned an hour later and was told that defendant had been taken away by the police.

### Opinion

■ Defendant's first contention on appeal is that the trial court erred in failing to instruct the jury, *sua sponte,* on the defense of alibi. The general instruction on alibi defenses, CALJIC No. 4.50,[1] was not requested by defendant and was not given to the jury. The record reflects that defendant relied on an alibi defense, testifying that he was not at the scene of the crime when it took place. (See Facts, *ante,* p. 583.)

The question of whether a trial court is under a duty in the absence of a request, to instruct the jury on the alibi defense, was addressed specifically in *People* v. *Freeman* (1978) 22 Cal.3d 434 [149 Cal.Rptr. 396, 584 P.2d 533]. The Supreme Court held that the general rules regarding a trial court's obligation to instruct the jury *sua sponte,* do not require a *sua sponte* instruction on alibi whenever an alibi defense is relied upon. (*Ibid.,* at p. 437.) The determining factor is whether such an instruction is necessary for the jury's understanding of the case, and the Supreme Court found it not to be so when the jury is instructed generally on the issues of reasonable doubt and burden of proof.

Where alibi is the sole defense relied upon, and the standard instructions regarding reasonable doubt and burden of proof are given, the case against requiring a *sua sponte* alibi instruction is even stronger. The Supreme Court stated that under these circumstances, "It would have been redundant to have required an additional instruction which directed the jury to acquit if a reasonable doubt existed regarding defendant's presence during the crime." (*People* v. *Freeman, supra,* at p. 438.)

---

[1]CALJIC No. 4.50 reads as follows: "The defendant in this case has introduced evidence tending to show that he was not present at the time and place of the commission of the alleged offense for which he is here on trial. If, after a consideration of all the evidence, you have a reasonable doubt that the defendant was present at the time the crime was committed, he is entitled to an acquittal."

In the present case, as in *Freeman,* the sole defense relied upon by defendant was alibi and the jury was given the standard instructions regarding reasonable doubt and burden of proof.[2] We therefore hold that the trial court did not err in failing to instruct the jury *sua sponte* on the alibi defense. The defendant's reliance on *People* v. *Rubio* (1977) 71 Cal.App.3d 757, 770-772 [139 Cal.Rptr. 750], which held that an instruction on the alibi defense was required even in the absence of a request, is without merit because *Rubio* is disapproved by *Freeman* to the extent that it is inconsistent therewith. (*People* v. *Freeman, supra,* 22 Cal.3d at pp. 438-439.)

■ Defendant's second contention is that he was not advised of, and therefore did not effectively waive, his constitutional privilege against self-incrimination and his constitutional right to confrontation of witnesses, before admitting his prior felony conviction. An examination of the significant portions of the record discloses no express mention of self-incrimination or confrontation of witnesses, preceding defendant's admission of the prior conviction.[3]

---

[2]The jury was given CALJIC No. 2.90 which reads: "A defendant in a criminal action is presumed to be innocent until the contrary is proved, and in case of a reasonable doubt whether his guilt is satisfactorily shown, he is entitled to an acquittal. This presumption places upon the State the burden of proving him guilty beyond a reasonable doubt. Reasonable doubt is defined as follows: It is not a mere possible doubt; because everything relating to human affairs, and depending on moral evidence, is open to some possible or imaginary doubt. It is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction, to a moral certainty, of the truth of the charge."

[3]"THE COURT: All right then, you may proceed with the waivers and admissions.

"[Prosecutor]: Thank you, your Honor. [¶] . . . [¶] I understand, sir, that it is your desire to admit to that prior conviction; is that correct sir?

"THE DEFENDANT: Yes, sir.

" . . . . . . . . . . . . . . . . . . .

"[Prosecutor]: Sir, you must understand that the People have a burden to prove this beyond a reasonable doubt; do you understand that, sir, if you do not admit the prior conviction?

"THE DEFENDANT: No, I admit it.

"[Prosecutor]: Do you understand that if the People do not, I, as a prosecutor, would have to prove this beyond a reasonable doubt; do you understand that?

"THE DEFENDANT: Yes, I do.

"[Prosecutor]: Do you also understand, sir, that you have the right to have the jury, who will be called to hear the case in chief as to Count I and to Count II, they could hear the evidence and then they alone have the right to determine whether or not you did suffer a prior felony conviction? [¶] In other words, you have the right to have a jury trial on this issue; do you understand that, sir?

"THE DEFENDANT: Yes.

"[Prosecutor]: Is it your desire at this time to waive your right to a jury trial?

■ It is well settled that a criminal defendant must be advised of, and must waive, three specific constitutional rights before his guilty plea is accepted by the court. (*Boykin* v. *Alabama* (1969) 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709]: *In re Tahl* (1969) 1 Cal.3d 122 [81 Cal.Rptr. 877, 460 P.2d 449].) The three enumerated rights are the privilege against self-incrimination, the right to confrontation of witnesses, and the right to a jury trial. (*Id.,* at p. 132.) The mandate of *Boykin* and *Tahl* was extended to the situation of a defendant's admission that he suffered a prior felony conviction by *In re Yurko* (1974) 10 Cal.3d 857, 861-863 [112 Cal.Rptr. 513, 519 P.2d 516]. The Supreme Court stated: "We conclude that *Boykin* and *Tahl* require, before a court accepts an accused's admission that he has suffered prior felony convictions, express and specific admonitions as to the constitutional rights waived by an admission. The accused must be told that an admission of the truth of an allegation of prior convictions waives, as to the finding that he has indeed suffered such convictions, the same constitutional rights waived as to a finding of guilt in case of a guilty plea." (*Id.,* at p. 863. See also *In re Foss* (1974) 10 Cal.3d 910, 930 [112 Cal.Rptr. 649, 519 P.2d 1073].)

The meaning of *Yurko,* as to what constitutes "express and specific admonitions," has been the subject of some disagreement in the cases. The People in the present case rely upon *People* v. *Lizarraga* (1974) 43 Cal.App.3d 815 [118 Cal.Rptr. 208], in which the court acknowledged the requirements of *Yurko* but nevertheless held that "By telling defendant that he had a right to demand a trial at which the prosecution would be required to prove the prior conviction, the trial judge effectively conveyed the essential message of the privilege against self-incrimination." (*Id.,* at p. 819.) The *Lizarraga* court also held, in regard to the right to confront witnesses, that ". . . the trial court need only inform the defendant that he does indeed have a right to force the prosecution to produce the record of the prior conviction and a right to contest its validity. Upon a

"[Defense Counsel]: On this issue alone.
"[Prosecutor]: Just on this issue?
"THE DEFENDANT: Oh, un-huh.
"[Prosecutor]: And you've discussed this with you [*sic*] attorney at length; is that correct?
"THE DEFENDANT: Yes, I did.
"[Prosecutor]: Counsel join in the waiver?
"[Defense Counsel]: Join.
"[Prosecutor]: People will join, your Honor. [¶] At this time, sir, you admit or deny the prior felony conviction on the 18th day of June, 1968, a violation of Section 245, a felony; do you admit or deny that charge?
"THE DEFENDANT: Yes, I admit it."

knowledgeable waiver of these rights, there is no need to warn the defendant that he is surrendering the right to cross-examine live witnesses, because the agenda will never reach that stage." (*Id.,* at p. 821.)

We hold that *Lizarraga* does not apply under the facts of the instant case. In *Lizarraga* the defendant waived his right to trial by jury. In the case before us defendant did not waive his right to a jury trial, thus he cannot be inferred to have been effectively advised of his rights regarding his prior conviction.

The instant case is very similar to *People* v. *Johnson* (1978) 77 Cal.App.3d 866, 875 [143 Cal.Rptr. 852], which held that the *Yurko* and *Foss* requirements must expressly be met.

Any doubt about the role of inference in the advising and waiver of constitutional rights was removed by the Supreme Court in *People* v. *Levey* (1973) 8 Cal.3d 648 [105 Cal.Rptr. 516, 504 P.2d 452]. The court stated (at p. 653): "We do not perceive how we can state and restate the rule with greater clarity than we have undertaken in . . . three successive decisions. The trilogy leaves no doubt that to establish a defendant was advised of and waived his constitutional rights in pleading guilty there must be a specific and express showing on the face of the record that the rights were made known to and waived by him, and that mere inference, no matter how plausibly drawn from the evidence, does not suffice." While *Levey* involved a guilty plea and the present case involves only the admission of a prior conviction, it is clear that the same panoply of rights attaches to the defendant in the latter situation as does in the former. (*In re Yurko, supra,* 10 Cal.3d 857, 863; *People* v. *Johnson, supra,* 77 Cal.App.3d 866, 876.)

Since in the present case the defendant was not specifically and expressly advised of his right to confront witnesses or his privilege against self-incrimination before he admitted his prior felony conviction, we find that the trial court committed reversible error in accepting defendant's admission of that conviction. Defendant's remedy for this error is limited to reversal of that part of the judgment concerning the prior felony conviction. (*People* v. *Johnson, supra,* at p. 877.)

The judgment convicting defendant of assault with a deadly weapon is affirmed. That part of the judgment declaring the existence of defendant's prior conviction is reversed. The case is remanded to the trial court with directions to resentence defendant after a limited new trial on the issue of the prior conviction.

Ashby, J., and Hastings, J., concurred.