[No. F003807. Fifth Dist. May 29, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
DANIEL DEAN SHIPPEY, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part III.

COUNSEL

Bryan Kemnitzer, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, and Garrick W. Chock, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

MARTIN, J.—Defendant, Daniel Dean Shippey, and his brother, Douglas Ray Shippey, were respectively charged with petty theft with a prior conviction of petty theft in violation of Penal Code section 666.[1] Defendant admitted the alleged prior petty theft conviction out of the presence of the jury and the case proceeded to jury trial. Defendant was found guilty but his brother was acquitted. Defendant was sentenced to state prison for the upper term of three years. He appeals.

### STATEMENT OF FACTS

About 6:20 p.m. on November 14, 1983, James Lundin, the assistant manager, was at work at a grocery store located in Bakersfield. From an observation booth that overlooked the store, Lundin observed Douglas and defendant standing in aisle "4", and saw each of them place two cartons of cigarettes inside the front of their pants and cover them with their shirts.

Lundin went outside the store after seeing defendant walk towards the front. He saw defendant walk through the check stand area without paying for anything, and walk out of the store. Lundin confronted defendant and asked him to reenter the store. Defendant did not reply and attempted to walk away. Lundin grabbed him and forced him back inside the store. A struggle ensued, they fell to the floor and one of the two cigarette cartons broke open. Another employee came to Lundin's assistance and they were able to subdue defendant.

Lundin then found Douglas near the rear of the shopping area of the store and asked him to accompany him to the office area. Douglas agreed and went with Lundin. Douglas did not leave the store or attempt to do so. Lundin found two cartons of cigarettes under Douglas' shirt stuffed down the front of his pants. Each carton of cigarettes sold for $8.19 plus tax.

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

Defendant had no money, wallet, or checkbook when booked into the county jail later that evening. Douglas had $7.11 but no checkbook.

## DEFENSE

Defendant testified he took four cartons of cigarettes out of his shopping cart, placed them under his arm, and walked towards the front of the store to exchange two cartons for a different brand. As he approached the check-out area, he realized that he had left his money in the glove compartment of Douglas' truck. He walked around the people standing in line intending to tell the cashier that he had to get his money. As he was setting the cartons on the counter, he saw Lundin outside acting as if he was trying to get inside through the exit door. Defendant looked at him and pointed to the entrance door several times but Lundin did not move. Defendant then walked over to the exit door, and stepped on the rubber mat to activate it. After stepping back to allow Lundin to enter, defendant claimed that Lundin walked inside, tackled him, and began to hit his head. Defendant stated that he had no intention of leaving the store without paying for the cigarettes, that he never stepped outside the store at all before being tackled by Lundin, and that he never placed any cartons down inside the front of his pants.

Defendant admitted on direct examination that he was convicted of petty theft in 1982.

## DISCUSSION

### I. WHETHER THE IMPOSITION OF A THREE-YEAR STATE PRISON TERM WAS CONSTITUTIONALLY INFIRM.

It is the contention of the defendant that imposition of a three-year term of imprisonment in state prison for the theft of $16.38 worth of cigarettes, based on a prior theft of less than $3 worth of food, constitutes cruel and unusual punishment in violation of article I, section 17 of the California Constitution.[2]

A person convicted of petty theft is punishable by a fine not exceeding $1,000 or by imprisonment in the county jail not exceeding six months, or both. (§ 490.) A person convicted of petty theft, having been previously convicted of petty theft, grand theft, burglary, or robbery and having served a term therefor in any penal institution or having been imprisoned therein as a condition of probation for such offense, is guilty of a felony and is

---

[2]According to the probation report, defendant's prior conviction was based on his theft from a supermarket of a package of meat valued at $2.58.

punishable by imprisonment in a county jail not exceeding one year or in the state prison. (§ 666.)

 In reviewing assertions that a particular sentence amounts to cruel or unusual punishment under the state Constitution (art. I, § 17), the reviewing court must determine whether the penalty "is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." (*In re Lynch* (1972) 8 Cal.3d 410, 424 [105 Cal.Rptr. 217, 503 P.2d 921].) In each of the subsequent decisions following *Lynch*, the court used certain factors identified in *Lynch* to aid in determining proportionality. (*Id.*, at pp. 425-429.) Especially relevant here is the first of these factors, i.e., an examination of "the nature of the offense and/or the offender, with particular regard to the degree of danger both present to society." (*Id.*, at p. 425; *People* v. *Dillon* (1983) 34 Cal.3d 441, 479 [194 Cal.Rptr. 390, 668 P.2d 697].) Among the relevant factors noted there were the triviality of the offense, the absence of violence, the age of the offender and the offender's past history and individual personality.

The cases since *Lynch* demonstrate that a punishment which is not disproportionate in the abstract is nevertheless constitutionally impermissible if it is disproportionate to the defendant's individual culpability. In *In re Foss* (1974) 10 Cal.3d 910 [112 Cal.Rptr. 649, 519 P.2d 1073], the California Supreme Court had "no doubt that heroin abuse presents a serious problem to our society or that harsh penalties may be necessary to restrict the supply, sale and distribution of this substance." (*Id.*, at p. 921, fn. omitted.) Yet it stressed that the defendant had agreed to assist an acquaintance to obtain heroin only because the latter was an addict and was going through withdrawal; that the defendant was, himself, an addict and was suffering from withdrawal at the time of the events; and that the sole payment he took was enough of the narcotic for a dose of his own. (*Id.*, at p. 918.) The high court concluded that in such circumstances it shocked the conscience to automatically bar the defendant from parole for 10 years "without consideration for either the offender or his offense." (*Id.*, at p. 923.) In the case of *In re Rodriguez* (1975) 14 Cal.3d 639 [122 Cal.Rptr. 552, 537 P.2d 384], the defendant was convicted of child molesting and given the indeterminate life-maximum sentence then prescribed by the statute for that crime. The Adult Authority did not fix his term at less than maximum, and after serving 22 years, he sought release on habeas corpus. He first claimed the statute was unconstitutional on its face, contending that the life-maximum sentence it prescribed was grossly disproportionate to the offense of child molesting; the California Supreme Court held to the contrary, stressing the crime's potential for grave injury and even death. (*Id.*, at pp. 647-648.) In the alternative, the defendant attacked the statute as applied to him, urging that the 22 years he had served were disproportionate

to his actual culpability in the circumstances of the case. The high court held this claim meritorious and ordered him discharged from custody. The court reasoned that even though a statutory maximum penalty may not be facially excessive, the constitutional prohibition against cruel or unusual punishment requires that in every case the defendant be given a specific term that is "not disproportionate to the culpability of the individual offender" and reflects "the circumstances existing at the time of the offense." (*Id.*, at p. 652.) The court looked at the manner in which Rodriguez committed the offense, his past history and personal traits, and concluded the sentence imposed was disproportionate to his actual culpability in that case.

In *People* v. *Wingo* (1975) 14 Cal.3d 169 [121 Cal.Rptr. 97, 534 P.2d 1001], the Supreme Court held that "when a defendant convicted under a section encompassing a wide range of conduct challenges the statute as imposing cruel or unusual punishment . . . [t]he *Lynch* criteria will continue to be employed, but analysis under the first test—i.e., the nature of the offense and/or the offender—will turn on the facts and circumstances of the individual case." (*Id.*, at p. 183.)

In *People* v. *Dillon, supra,* 34 Cal.3d 441, the court used the principles and techniques identified in *Lynch* in analyzing the case of a 17-year-old high school student, charged with first degree felony murder and attempted robbery. The prosecution arose when defendant and several youthful companions attempted to take marijuana from a marijuana farm and defendant fatally shot a man who was guarding the farm. The jury found defendant guilty as charged, although it expressed a reluctance to apply the felony-murder rule to the facts. Defendant was ultimately sentenced to life imprisonment in state prison. The Supreme Court held that under the circumstances of the case, the sentence of life imprisonment as a first degree murder violated article I, section 17 of the Constitution. The judgment was modified by reducing the degree of the crime to murder in the second degree. (*Id.*, at p. 489.)

The court in *Dillon* applied the proportionality rule of *Lynch* to their view of an attenuated showing of individual culpability in that case and the massive loss of liberty entailed in a life sentence, which was the same punishment that would have been inflicted had defendant committed premeditated first degree murder and held that the penalty constituted cruel and unusual punishment.

 Defendant urges a similar analysis of the record in this case mandates a finding of cruel and unusual punishment. Defendant alleges he received a three-year prison sentence for the theft of approximately $16 worth of cigarettes; the theft was accomplished without the use of violence and of

little potential physical danger to society; and the length of the term was made possible by virtue of the fact that defendant had previously pled guilty to a petty theft of a $2.58 package of meat. Defendant urges that his culpability for the crime for which he has been sentenced be considered relatively minimal.

In light of the record before us, the facts do not entirely support defendant's analysis. He received a prison sentence because he committed a felony, petty theft with a prior conviction of petty theft, and the sentencing court concluded that based on the present crime and defendant's prior criminal history, probation should be denied, a conclusion supported by the record. While petty theft is usually accomplished without the use of violence, here defendant when apprehended at the scene of the crime had to be forcibly subdued and restrained. Defendant's statement that the prior petty theft conviction was for stealing a $2.58 package of meat is entirely unsupported in the record and, moreover, is of no significance as to guilt or innocence of the crime charged. He was found guilty of the charge by the trier of fact, the jury. They did not return a verdict of "a little guilty" or "minimally guilty." Defendant's contention that his culpability should be considered relatively minimal is completely without merit.

Defendant also contends that the second *Lynch* factor, i.e., that more serious crimes are punished in this state less severely than the offense in question, supports his argument. As his argument goes, the crimes of a similar type which may be considered more serious than petty theft that impose equal punishment are grand theft (§ 489), second degree burglary (§ 461), forgery (§ 473) and embezzlement (§ 514). Additionally, a number of statutes proscribing potentially more dangerous or violent conduct provide for the same or lesser punishment, such as administering narcotics to another to aid in the commission of a felony (§ 222), discharging a firearm at an aircraft (§ 247), possession of a deadly weapon with intent to commit assault (§ 467), assault (§ 241, subd. (a)), battery (§ 243, subd. (a)), and a number of sex-related crimes (§§ 266, 266a, 266b, 267, 289, subd. (b), 311.3).

It is the People's position the sentence imposed in the instant case was proper under an analysis pursuant to *Dillon*. Defendant was born in 1940 and was 28 years old when he first pled guilty to disturbing the peace after being charged with disturbing the peace and resisting arrest. His subsequent misdemeanor convictions were numerous, 12 in all, and involved 2 acts of violence, assault and battery on a citizen in 1982, and assault and battery on a police officer in 1983. His prior performances on numerous instances of probation were unsatisfactory. Although he may have had the money in the truck for the cigarettes, the jury found that he had taken the cigarettes

without intending to pay for them. Thus, according to the People, there can be no favorable comparison between defendant and the 17-year-old defendant in *Dillon* who had no prior criminal record and had committed the homicide under great stress and provocation. Defendant's crime and his record indicate that he has slight regard for the law and even less regard for rehabilitation when given probation in the past. The People's argument is the more persuasive.

We conclude that defendant's cruel and unusual punishment argument based on *Lynch* and *Dillon* must be rejected.

## II. FAILURE TO ADVISE DEFENDANT OF HIS RIGHTS BEFORE ACCEPTING HIS ADMISSION OF A PRIOR MISDEMEANOR CONVICTION.

*A. Whether Boykin-Tahl require that defendant be advised of his rights before admitting a prior misdemeanor conviction.*[3]

■ *In re Tahl* interpreted *Boykin* to require that when a trial court accepts a guilty plea "the record must contain *on its face* direct evidence that the accused was aware, or made aware, of his right to confrontation, to a jury trial, and against self-incrimination, . . ." (*In re Tahl, supra,* 1 Cal.3d 122, 132; original italics.) *Boykin* established a new constitutional standard, i.e., that a waiver of the three aforementioned important federal rights will not be presumed from a silent record. (*Boykin* v. *Alabama, supra,* 395 U.S. 238, 243-244 [23 L.Ed.2d 274, 279-280].)

■ In the case of *In re Yurko* (1974) 10 Cal.3d 857 [112 Cal.Rptr. 513, 519 P.2d 561], the Supreme Court announced: "[A]s a judicially declared rule of criminal procedure [citation] an accused, prior to the time the court accepts his admission of an allegation of a prior criminal conviction or convictions, is entitled to be advised: . . .

"(2) of the precise increase in the term or terms which might be imposed, if any, in the accused's case pursuant to section 644 or other applicable statutes. (See, e.g., §§ 666, 667); . . ." (*Id.,* at p. 864.)

The *Yurko* requirements must be specifically and expressly met. (*People* v. *Hernandez* (1979) 100 Cal.App.3d 637, 642 [160 Cal.Rptr. 607]; *People* v. *Hickey* (1980) 109 Cal.App.3d 426, 434 [167 Cal.Rptr. 256].)

---

[3]*Boykin* v. *Alabama* (1969) 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709]; *In re Tahl* (1969) 1 Cal.3d 122 [81 Cal.Rptr. 577, 460 P.2d 449], certiorari denied 398 U.S. 911 [26 L.Ed.2d 72, 90 S.Ct. 1708].

In *Bunnell* v. *Superior Court* (1975) 13 Cal.3d 592, 605 [119 Cal.Rptr. 302, 531 P.2d 1086], the Supreme Court directed that "[i]n all guilty plea . . . cases the defendant shall be advised of the direct consequences of conviction such as the permissible range of punishment provided by statute . . . ." The requirement extends only to the primary and direct consequences of his imminent conviction. (*In re Carabes* (1983) 144 Cal.App.3d 927, 929 [193 Cal.Rptr. 65].)

 Defendant seeks to apply the rule in *Yurko* to the situation in this case involving admission of a prior misdemeanor. Defendant reasons the Supreme Court's holding in *Yurko* rested on the ground that by admitting a prior felony the defendant may be subjecting himself to severe sanctions. There the court reasoned: "Undoubtedly the particular rights waived by an admission of the truth of the allegation of prior convictions are important. Although there is not at stake a question of guilt of a substantive crime, the practical aspects of a finding of prior convictions may well impose upon a defendant additional penalties and sanctions which may be even more severe than those imposed upon a finding of guilt without the defendant having suffered the prior convictions. Thus a finding of prior convictions may foreclose the possibility of probation (§ 1203), may extend the term for the basic crime to life imprisonment (§ 644), and may substantially extend the time served on such a life sentence before the defendant becomes eligible for parole (§§ 3046-3048.5)." (*Id.*, 10 Cal.3d at p. 862.)

This reasoning appears equally applicable to the instant case. Proof of a prior under section 666 raises a misdemeanor crime punishable by a fine or county jail sentence to a felony punishable by imprisonment. In the instant case this is certainly true. Admitting the prior petty theft ultimately resulted in defendant's sentence to state prison for three years.

Furthermore, the *Boykin-Tahl* rights would have been applicable to a person charged under section 666 with a prior grand theft, robbery or burglary which are all felonies. We perceive no logical reason why the *Yurko* rule would not be applicable to this defendant who was charged with only a prior petty theft.

The People would have us distinguish the instant case from *Yurko* on the sole basis that *Yurko* involved a prior felony conviction. However, while *Yurko* does in fact involve a felony conviction, the rationale of the case does not appear to be so limited. Careful research fails to uncover any case subsequent to *Yurko* which addresses the question of whether *Yurko* extends to a prior misdemeanor conviction. The People cite only *People* v. *Franco* (1970) 4 Cal.App.3d 535 [84 Cal.Rptr. 513], a pre-*Yurko* case, in which the appellant was charged with the crime of theft with a prior conviction of

petty theft. The Second District Court of Appeal differentiated the admission of the truth of the allegation of prior convictions from a plea of guilty to a characterization of the former as merely allowing a determination of a "status" which can subject an accused to increased punishment. (See also *In re McVickers* (1946) 29 Cal.2d 264 [176 P.2d 40].) These two cases were cited in *Yurko* and the Supreme Court stated "[a]lthough this may be technically correct, the distinction is meaningless if, as in the case of a plea of guilty, the accused nevertheless will be held to have waived, without proper protections, important rights by such an admission." (*In re Yurko, supra,* 10 Cal.3d 857, 862.) This rationale is equally applicable to an admission of a prior misdemeanor conviction which may result in greatly increased potential punishment.

In the instant case, defendant was neither advised of his constitutional rights nor informed of the consequences of his admission. As the record before us fails to disclose on its face that the defendant was aware of or advised of his rights as *Yurko* requires, error occurred. Moreover, as we will explain, the error requires reversal of the judgment below.

In the case of *In re Ronald E.* (1977) 19 Cal.3d 315, 320 [137 Cal.Rptr. 781, 562 P.2d 684], the Supreme Court noted that since the *Yurko* rule is not of constitutional dimensions but a judicially declared rule of criminal procedure, the failure of the court to advise an accused of the consequences of an admission constitutes error which requires that the admission be set aside only if the error is prejudicial to the accused. Thus, reversal is required only where it is reasonably probable that, if advice had been given, appellant would have denied the prior conviction and it would have been found not to have occurred. (*People* v. *Prado* (1982) 130 Cal.App.3d 669, 675 [182 Cal.Rptr. 129]; *People* v. *Caban* (1983) 148 Cal.App.3d 706, 712 [196 Cal.Rptr. 177]; *People* v. *English* (1981) 116 Cal.App.3d 361, 369 [172 Cal.Rptr. 122].)

The determinative inquiry on the issue of prejudice is the harmless error test articulated in *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]. Is it reasonably probable defendant might not have admitted the allegation had he been advised that such admission would permit the imposition of a three-year sentence in state prison? As defendant points out, section 666 requires that defendant not only be convicted of a prior petty theft, but that he also have "served a term therefor in any penal institution" or that he was "imprisoned as a condition of probation."

It is not clear from the wording in the information whether defendant did or did not serve a term in any penal institution or whether he was imprisoned as a condition of probation for his prior petty theft conviction. Nor is the

information contained in defendant's probation report or the included "rap sheet" particularly helpful in this regard. At best, it appears that defendant was sentenced to one year in jail in September 1982, for petty theft and/or assault on a person and/or battery of a person, or some combination of the above. It seems entirely possible, from this record, that defendant may have served no time in custody for the prior petty theft conviction. More importantly, on the issue of prejudice under the *Watson* test, it is unlikely that defendant knew or understood the formalities of his sentence with regard to the three prior convictions at the time of his admission of the prior petty theft *as prescribed in section 666.* Therefore, it is doubtful he knowledgeably admitted the truth of the allegation.

We conclude defendant was not adequately advised of his rights as required by *Boykin-Tahl* and *Yurko* and, from these facts, it is reasonably probable defendant might not have admitted the prior conviction had he been so fully advised. Thus, prejudice to the defendant resulted and the conviction must be reversed.

B. *Whether defendant's admission was coerced by the court.*

The next issue raised by defendant, that his admission of the prior petty theft was coerced by the court, need not be addressed in detail in view of our analysis and conclusion in part II-A of this opinion which mandates reversal. ■ However, we should point out that both counsel for the defense and the trial judge apparently mistakenly construed the holding in *People* v. *Bracamonte* (1981) 119 Cal.App.3d 644 [174 Cal.Rptr. 191], to apply to the instant case. *Bracamonte* held that whenever a defendant pleads not guilty to priors and a jury trial thereof is not waived, he is entitled to a bifurcated proceeding wherein the jury is not informed of his prior convictions until it has found the defendant guilty of the principal charge. (*Id.,* at p. 654.) This rule is not applicable to the instant case where the prior conviction is itself an element of the underlying charge. ■ In such a case, *People* v. *Hall* (1980) 28 Cal.3d 143, 155-156 [167 Cal.Rptr. 844, 616 P.2d 826] requires that defendant be given the option to stipulate to the existence of the prior conviction and thereby preclude its presentation to the jury. If a defendant, after proper advisement of his rights, elects not to stipulate, the People must prove the prior conviction by presentation of evidence to the jury in the same manner as any other element of the crime charged. ■ Nor does the "truth in evidence" provision in Proposition 8 abrogate this procedure in the instant case. Article I, section 28, subdivision (f) of the California Constitution provides: "When a prior felony conviction is an element of any felony offense, it shall be proven to the trier of fact in open court." While the rule of *Bracamonte* was apparently overruled by this provision, it does not affect the instant case. This part of

subdivision (f) is by its own terms limited to a prior felony conviction and would not apply to a section 666 charge of petty theft with a prior petty theft. Had the drafters of Proposition 8 intended otherwise, they would have used the term "prior conviction" rather than "prior felony." Since section 28, subdivision (f) is clearly stated and unambiguous on its face, it must be applied accordingly.

### III. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN SENTENCING DEFENDANT TO THE AGGRAVATED THREE-YEAR TERM.*

. . . . . . . . . . . . . . . . . . . . .

The judgment is reversed and remanded for new trial or dismissal of the charge at the option of the district attorney.

Hanson (P. D.), Acting P. J., and Tuttle, J., † concurred.

---

*See footnote, *ante,* page 879.

†Retired judge of the superior court sitting under assignment by the Chairperson of the Judicial Council.