[No. B006415. Second Dist., Div. Four. Dec. 24, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
EDWARD LEE GOLSTON, Defendant and Appellant.

COUNSEL

Nancy B. Sperber, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Mark Alan Hart and Terry T. Fujimoto, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**WOODS, P. J.**—Appellant Edward Lee Golston was charged with, and convicted of, one count of forgery (Pen. Code, § 470) and a prior forgery

conviction within the meaning of section 667.5, subdivision (b). He was sentenced to the upper term of three years in state prison, plus one year for the prior conviction. He contends on appeal that the trial court erred in (1) ruling that he could be impeached with the prior forgery conviction in the event that he testified and (2) denying his motion to bifurcate the issue of the validity of the prior from the issue of guilt. We find that the trial court erred on both issues, but that the error was nonprejudicial on the facts of this case. We therefore affirm.

The prosecution's evidence established that Basilisa Bigornia, an accountant for the district attorney's office, had the duty to issue checks for witness fees. Witnesses who were entitled to such checks sometimes came to her office, which was in the building across the street from the criminal courts building. The witnesses would bring with them a witness fee and expense claim form signed by the prosecuting attorney and judge. The checks were for $12 or $18, depending on the judge's discretion. Ms. Bigornia would write out a check and have it signed by one of the six people in her office who were authorized to sign such checks.

Ms. Bigornia gave six checks for witness fees to appellant (People's 2). The checks were in her handwriting, were marked "witness fee expense," and were payable to Edward Golston. They were in the amount of $18 or $36, the latter sum representing two days' testimony.

It was also Ms. Bigornia's duty to issue checks to provide extradition funds so that law enforcement agents could transport fugitives between states. Those checks were usually over $1,000, and were also handwritten by Ms. Bigornia. Ms. Bigornia kept the checks in her desk, which she locked every day when she left the office.

On September 22, 1983, she noticed that the desk drawer in which she kept the extradition checkbook had been pried open. Six checks were missing from the extradition account. One of the missing extradition checks, check number 0156, was the critical evidence against appellant (People's 1). It was in the amount of $405, an unusual amount for that type of check. The authorizing signature was in the name of "Ronald M. Carrder," which was not the name of anyone who worked at that office or was authorized to sign such a check. The check was made payable to E. L. Golston. The words "E. L. Golston" were typed on the check. Ms. Bigornia did not issue the extradition check to appellant, and had never issued such a check to a witness.

Appellant cashed several of the small, properly issued witness fee checks with Lydia Gonzales, who worked for a check cashing firm which operated

a booth at 5th and Broadway. It was the practice of the firm to call on an unfamiliar check, unless the amount was very low, in which case the check would be cashed with identification like a California driver's license. Customers were asked to fill out a card with information regarding their job location, home address, home telephone number, age, weight and birth date.

Ms. Gonzales asked appellant why he had been given the witness fee checks. He told her the checks were for his expenses in a case in which he was testifying. He asked what verification would be needed in order to cash a $400 check he expected to receive for meal and hotel expenses incurred when he had been transported to Santa Barbara. Ms. Gonzales told him that if he came to the booth on a day when the county office was closed and the check could not be verified, he would need a letter to prove why he was entitled to that large amount. Appellant asked if a list of his expenses would be sufficient; Ms. Gonzales told him yes.

About October 1, a Saturday, appellant brought Ms. Gonzales the $405 check (People's 1). He showed her a letter signed by a judge and district attorney breaking down his $405 expenses in Santa Barbara. She cashed the check for him, and did not retain the expense list. Appellant endorsed the back of the check and wrote in a Compton address which matched the address on the card he had filled out.

On September 30, appellant cashed a valid $18 witness fee check at a different check cashing service on East 7th Street. It was the policy of the employee there, Monte Krimston, to verify if a check was good before cashing it by calling the bank or issuing agency. Appellant told Mr. Krimston that he would be getting a larger witness fee check for $400 or $600 as he was an out-of-town witness for a trial. Mr. Krimston called the court to verify this but appellant never returned with the $400 check. The witness coordinator for the district attorney's office ascertained from the program's records that appellant was not entitled to anything other than the $12 or $18 per diem.

In the opinion of a handwriting expert, appellant's signature appeared on the endorsements of the valid witness fee checks (People's 2) and the stolen extradition check (People's 1).

The prosecution also introduced documentary evidence that appellant had been convicted of forgery in 1978 (People's 3).

Appellant testified in his own defense. He admitted that he had previously served two years in prison for the forgery conviction. Concerning the

present charge, he indicated that he had collected the six witness fee checks (People's 2) for his testimony as a witness for the district attorney. The extradition check (People's 1) had unexpectedly arrived in the mail at his house on September 29 or 30. As far as he knew, he was not entitled to such a check, but his name was on it. He called the bank to verify the check. The bank told him it could not release information on who had sent it, but that if he cashed the check and it was not good, he would be notified at his address.

Appellant cashed the check with Ms. Gonzales at the check cashing stand after she called the bank to ascertain that the check was good. He showed her his driver's license and gave her his mailing address, which was his brother's residence. He also showed her a breakdown of his expenses for witness fee checks, but nothing listing fees of $405. He denied telling Ms. Gonzales that he was a witness in a' Santa Barbara case, or showing her a list of his expenses there.

Appellant added on cross-examination that he had cashed witness fee checks with Mr. Krimston. According to appellant, Krimston had been lying when he said appellant had mentioned Santa Barbara and returning with a $400 check.

As indicated, appellant was charged with forgery and a prior felony conviction for forgery. Before trial, he moved to bifurcate the trial on the validity of the prior from the trial of guilt, under *People v. Bracamonte* (1981) 119 Cal.App.3d 644 [174 Cal.Rptr. 191]. He also sought to preclude impeachment with the prior felony conviction in the event that he testified, under *People v. Beagle* (1972) 6 Cal.3d 441 [99 Cal.Rptr. 313, 492 P.2d 1]. The trial court judge, who said he had not sat on criminal cases for some time, denied both defense motions due to Proposition Eight.

■ *People v. Castro* (1985) 38 Cal.3d 301 [211 Cal.Rptr. 719, 696 P.2d 111], demonstrates that the trial court erred in ruling that Proposition Eight permits impeachment with "any felony." Under *Castro,* a witness may be impeached with a prior felony conviction that necessarily involves moral turpitude, but the trial court retains its discretionary power under Evidence Code section 352 to exclude any prior conviction whose probative value is outweighed by the risk of undue prejudice.

Both here and in *Castro,* the defendant testified notwithstanding an erroneous trial court failure to exercise discretion on the admissibility of the prior conviction for impeachment. The standard of review utilized by *Castro* in this situation is that of *People v. Watson* (1956) 46 Cal.2d 818

[299 P.2d 243].[1] Before applying that standard, we must determine whether the trial court was correct in refusing to bifurcate the trial on the prior from the guilt trial. If the motion to bifurcate was properly denied, there could be little prejudice from the *Castro* error, as the jury would have learned of the prior conviction in any event.

█ In *People* v. *Bracamonte, supra,* 119 Cal.App.3d at pages 654-655, Division Three of this court adopted as a judicially declared rule of practice a rule that "whenever . . . a defendant pleads not guilty of priors and a jury trial thereof is not waived, he is entitled to a bifurcated proceeding wherein the jury is not informed of his prior convictions, either through allegations in the charge or by the introduction of evidence, until it has found the defendant guilty."

The continuing validity of *Bracamonte* was cast into question by the passage of article I, section 28, subdivision (f) of the California Constitution as part of Proposition Eight. That subdivision provides in pertinent part: "Any prior felony conviction of any person in any criminal proceeding . . . shall subsequently be used without limitation for purposes of impeachment or enhancement of sentence in any criminal proceeding." Hearing was granted in *People* v. *Miller* (Crim. 23602), and *People* v. *Sweeney* (Crim. 23603), following conflicting appellate resolutions of this issue. *People* v. *Sweeney,* in which the Fourth District had held that *Bracamonte* survives Proposition Eight, was later retransferred for reconsideration of another point in light of *People* v. *Castro, supra,* 38 Cal.3d 301. *People* v. *Miller,* which had held that Proposition Eight abrogates *Bracamonte,* was retransferred to Division One of this court with instructions to refile the opinion but not publish it. Thus, as the Supreme Court noted in *People* v. *Thomas* (1986) 41 Cal.3d 837, 842, footnote 4 [226 Cal.Rptr. 107, 718 P.2d 94], "[t]he matter has still not been definitively settled by this court."

Another recent Supreme Court footnote, *People* v. *Valentine* (1986) 42 Cal.3d 170, 179, footnote 3 [228 Cal.Rptr. 25, 720 P.2d 913], discusses *Bracamonte* without questioning its continued effect. The specific holding of *Valentine* is that when a defendant is charged with being an ex-felon in possession of a concealable firearm and offers to stipulate to the prior felony, under Proposition Eight the jury is to be told that the defendant is an ex-felon but not the nature of the prior felony. In footnote 3, *Valentine*

[1]Respondent mistakenly asserts that the case should be remanded under *People v. Collins* (1986) 42 Cal.3d 378 [228 Cal.Rptr. 899, 722 P.2d 173], for a limited hearing on the admissibility of the prior conviction. Since appellant testified, *Collins* requires us to make a preliminary determination of whether the error was prejudicial under the *Watson* test. (42 Cal.3d at pp. 390-391.) As we find that the error was nonprejudicial, a limited remand is not required.

rejected a defense argument that the inherent prejudice of disclosing the ex-felon status to the jury could be minimized by bifurcating the ex-felon issue from the issue of the possession of the firearm. The court distinguished *Bracamonte* on the ground that Bracamonte's rule of procedure was based on the severability of the issues of guilt and proof of the prior for enhancement, while in the *Valentine* situation the ex-felon status was directly related to guilt. There is no indication in *Valentine* either that *Bracamonte* is not good law or that it did not survive Proposition Eight.

Division Seven of this court directly addressed the *Bracamonte*/Proposition Eight issue in *People* v. *Tipton* (1984) 160 Cal. App.3d 853 [206 Cal.Rptr. 821] (hg. den. Jan. 3, 1985). *Tipton* held that there is no conflict between *Bracamonte* and section 28, subdivision (f). It reasoned: "*Bracamonte* has no effect on the *use* of a prior felony conviction; it only addresses the procedure for determining if there is any prior felony conviction that can be used." (*Id.,* at p. 855.) That conclusion was supported both by the language of section 28 and the absence of any reference in the Proposition Eight ballot pamphlet to the bifurcated trial procedure. *Tipton* further found that the bifurcated trial procedure should be continued as it plays an important role in assuring the accused a fair trial.

The Fifth District relied on *Tipton* in *People* v. *Martinez* (1985) 175 Cal.App.3d 881, 892-893 [221 Cal.Rptr. 258], which also found that a trial court had erroneously denied a defense motion to bifurcate based on Proposition Eight.

Under *Bracamonte, Tipton* and *Martinez,* appellant's motion for bifurcation should have been granted. The question then is prejudice.

In *Bracamonte,* the defendant was charged with burglary and five prior felony convictions, including two burglaries. The trial court denied defense motions both to bifurcate and to exclude use of the prior convictions for impeachment. Testimony and documentary evidence regarding the priors were admitted, and the prosecutor referred to the defendant in his jury argument as "a professional crook." After holding that the defendant was entitled to bifurcation, *Bracamonte* concluded that "the application of the unitary procedure in this particular case has resulted in such prejudice that it constituted an abuse of discretion and operated in fact to deny defendant due process of law." (119 Cal.App.3d at p. 655.) That conclusion was based on a number of factors, including: the prosecutor's reference in argument, the importance to the case of the defendant's credibility, the fact that some of his prior convictions should have been excluded, and the relative weakness of the prosecution's case. (At pp. 655-656.) The judgment was reversed.

In *People* v. *Tipton, supra,* 160 Cal. App.3d 853, the defendant was charged with burglary and a prior felony conviction for robbery. As a result of the trial court's denial of his motion for bifurcation, he admitted the prior conviction. The jury found him guilty of the burglary charge, and he was sentenced on it and a five-year enhancement for the prior conviction. After finding that the trial court's bifurcation ruling was erroneous, the court made the following analysis of prejudice: "Failure to grant Mr. Tipton's request for a bifurcated trial was prejudicial error. The only relevance of the alleged prior felony conviction related to sentence enhancement. Thus, the defendant was required to choose between admitting the prior conviction and losing his opportunity to contest its existence and validity or denying the prior conviction and subjecting himself to the prejudicial effect of evidence that would otherwise have not been admissible. This is precisely the situation condemned in *Bracamonte.* [Citation.]" (*Id.,* at pp. 856-857.) The court therefore affirmed the conviction but vacated the sentence and remanded the matter for jury trial on the issue of the prior conviction.

Similarly, in *People* v. *Martinez, supra,* 175 Cal.App.3d 881, the defendant was charged with robbery and a prior felony conviction for robbery. The court denied a defense *Beagle* motion due to Proposition Eight. In light of that ruling, the court stated that it would grant the defense motion to bifurcate the trial only if the defendant did not testify, since if he testified the jury would learn about the prior in any event. The defendant admitted the prior conviction out of the jury's presence, and was impeached with it on cross-examination. *Martinez* first held that the trial court committed *Castro* error in failing to exercise its discretion. That error was found nonprejudicial as the defendant had testified on his own behalf and the prosecution evidence was overwhelming. (*Id.,* at pp. 889-890.) However, the opinion then concluded that the erroneous refusal to bifurcate required reversal of the finding on the prior conviction. The court reasoned that the combination of the *Castro* and *Bracamonte* errors meant the defendant had been coerced into admitting the prior to avoid the risk that the jury would utilize it to suggest a general criminal predisposition.

Thus, *Bracamonte* reversed the entire trial, without stating a test of prejudice, on the ground that under its facts the defendant had been denied a fair trial. In *Tipton* and *Martinez,* admissions of priors were reversed, again without a discussion of the standard of prejudice, on the ground that the defendants had been improperly forced to admit the priors to avoid exposing the jury to them.

The prejudice issue here is factually closer to *Bracamonte* than to *Martinez* or *Tipton,* in that appellant did not admit the prior conviction but

had a trial in which the jury was exposed to it by way of documentary evidence[2] as well as by impeachment. We are therefore confronted with the question of whether appellant's entire trial should be reversed, rather than whether the prior conviction should be reversed due to a coerced admission of it.

■ As indicated, *Bracamonte* did not specify a standard of prejudice. We conclude that the prejudice from *Bracamonte* error should be evaluated under the *Watson* standard, which is the applicable standard for state procedural error. (*Chapman* v. *California* (1967) 386 U.S. 18, 21 [17 L.Ed.2d 705, 708-709, 87 S.Ct. 824, 24 A.L.R.3d 1065]; *Cooper* v. *California* (1967) 386 U.S. 58, 62 [17 L.Ed.2d 730, 734, 87 S.Ct. 788]; *People* v. *Hamilton* (1963) 60 Cal.2d 105, 120-121 [32 Cal.Rptr. 4, 383 P.2d 412].) We therefore use the *Watson* standard for both the *Castro* and *Bracamonte* errors here presented.

We are sensitive to the potential for prejudice resulting from the trial court's erroneous rulings. The jury, having learned at appellant's forgery trial that he had previously been imprisoned for an identical offense, might have great difficulty in following the instructions to utilize evidence of the prior for the limited purposes of impeachment and proof of the enhancement and not for guilt.

We are convinced, however, that based upon the evidence presented, it is not reasonably probable that the result would have been different in the absence of the errors. The prosecution's case against appellant was overwhelming. Moreover, appellant's testimony that the check had mysteriously appeared in his mail was totally incredible. To believe that testimony, the jury would have to find that an unknown person went to the trouble to break into Ms. Bigornia's desk, type appellant's name on the check, affix the unusual amount of $405 and a fictitious authorizing signature, and mail the check to appellant. Furthermore, appellant's testimony required the jurors to believe that the two independent witnesses from different check cashing services were perjuring themselves.

Under these circumstances, despite the seriousness of the errors, we do not find that they prejudiced appellant's trial.

---

[2]Respondent's brief misstates the record when it indicates the prior conviction was not introduced in the case-in-chief and was utilized only for purposes of impeachment. The record clearly shows that documentary evidence regarding the prior was introduced during the prosecution's case-in-chief as People's 3.

The judgment is affirmed.

Kingsley, J., and Arguelles, J., concurred.