[No. A046903. First Dist., Div. Five. May 23, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
MELVIN JAMES RAY, Defendant and Appellant.

COUNSEL

Patricia L. Watkins, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, David D. Salmon and Ronald S. Matthias, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

LOW, P. J.—Melvin James Ray was convicted by jury of attempted robbery (Pen. Code, §§ 211, 664)[1] by use of a knife (§ 12022, subd. (b)). Before trial he admitted he had suffered three prior serious felony convictions, and had served three prior prison terms therefor (§§ 667, subd. (a), 667.5, subd. (b)). He was sentenced to the middle term of two years for attempted robbery, one additional year for weapon use, and five years for each prior serious felony conviction, for a total term of eighteen years. The one-year prior prison term enhancements were stayed.

Before accepting Ray's admissions of the priors, the court advised him that he had the right to a jury trial on the allegations, that he had the right to cross-examine the prosecution's witnesses, that he would waive these rights by his admissions, that the district attorney would bear the burden of proving the allegations true, and that admitting the allegations would increase his potential prison term to 19 years if he was convicted of the robbery. The record contains no indication Ray was advised that by admitting the allegations he would be giving up his right not to incriminate himself.

The Attorney General concedes the lack of on-the-record advice and waiver as to self-incrimination was error under *In re Yurko* (1974) 10 Cal.3d 857 [112 Cal.Rptr. 513, 519 P.2d 561], but argues the error was harmless because it is not reasonably probable the allegations would have been found untrue had they been tried. ■ Ray argues that under *Yurko* failure to secure a knowing waiver of each constitutional right is per se reversible error. ■ ■ ■ After reviewing the statements of higher courts on the question, we conclude Ray is correct.[2]

■ The requirement of express constitutional advisements for admission of prior convictions, announced in *Yurko*, derives from the parallel requirements for a valid guilty plea, enunciated in *Boykin* v. *Alabama* (1969) 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709], and elaborated in *In re Tahl* (1969) 1 Cal.3d 122 [81 Cal.Rptr. 577, 460 P.2d 449]. In *Boykin* the court held that a guilty plea may not be taken without an affirmative

---

[1] All further statutory references are to the Penal Code unless otherwise noted.

[2] Ray also contends the court did not adequately advise him of his right of confrontation. The court stated Ray had the right "to have the district attorney come in and bring in witnesses where you can have them cross-examined or whatever other evidence the district attorney comes in with." The advisement of rights need not be in legalistic language, and is sufficient if it communicates to the defendant the essential character of the constitutional right. (*People* v. *Johnson* (1978) 77 Cal.App.3d 866, 875-876 [143 Cal.Rptr. 852].) The court here met that standard since it informed Ray he would have the right to challenge the witnesses or other evidence presented by the prosecution.

showing, on the record, that it is being made intelligently and voluntarily. (*Boykin, supra*, 395 at p. 242 [23 L.Ed.2d at p. 279].) A knowing waiver of the basic trial rights foreclosed by the plea—self-incrimination, jury trial, and confrontation—cannot be presumed from a silent record. Without a showing on the record, the plea would be considered involuntary. (*Id.*, at pp. 242-243 [23 L.Ed.2d at p. 279].) The *Boykin* court reversed the conviction without any other showing of prejudice, and the language of the opinion makes it clear that the reversal rested on the principle that an involuntary plea is void and cannot stand. Thus the court quoted, with apparent approval, from an earlier opinion in which it held, "'Consequently, if a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of due process *and is therefore void.*'" (*Id.*, at p. 243, fn. 5 [23 L.Ed.2d at p. 280], italics added.) In its concluding paragraph the *Boykin* court agreed with the dissenting justices below, who "stated the law accurately when they concluded that there was reversible error 'because the record does not disclose that the defendant voluntarily and understandingly entered his pleas of guilty.'" (*Id.*, at p. 244 [23 L.Ed.2d at p. 280].)

In *Tahl* our high court clarified the mandate of *Boykin,* expressly requiring that the record show a pleading defendant was made aware of each of the fundamental trial rights being forfeited. (*Tahl, supra*, 1 Cal.3d at p. 132.) No harmless error analysis was suggested. Indeed *Tahl* summarizes *Boykin* as holding that "a plea of guilty cannot stand unless the record . . . indicates a free and intelligent waiver . . . ." (*Id.*, at p. 130.)

In *Yurko* the California Supreme Court extended *Boykin* and *Tahl* to the admission of prior convictions. "Where no such showing appears on the face of the record the conviction must be set aside." (*Yurko, supra*, 10 Cal.3d at p. 862.) The court in *Yurko* also announced a judicially created, nonconstitutional rule of procedure requiring defendants to be advised of the consequences of their admissions. In contrast to the constitutional rule derived from *Boykin-Tahl,* failure to meet this nonconstitutional requirement would only require reversal "if prejudice appears." (*Id.*, at p. 864.) *Yurko* thus drew a distinction between two kinds of required advisements (of constitutional rights and of consequences) and between the two standards of prejudice applicable to each (automatic reversal where there was no advisement as to constitutional rights, harmless error analysis for failure to explain consequences).

The distinction and its consequences were reiterated even more explicitly in *In re Ronald E.* (1977) 19 Cal.3d 315 [137 Cal.Rptr. 781, 562 P.2d 684]. Summarizing *Yurko,* the court said: "Unlike an uninformed waiver of the specified constitutional rights which renders a plea or admission involuntary and requires that it be set aside, an uninformed waiver based on the

failure of the court to advise an accused of the consequences of an admission constitutes error which requires that the admission be set aside only if the error is prejudicial to the accused." (*Ronald E., supra,* at p. 321.) The court, applying the prejudice standard of *People v. Watson* (1956) 46 Cal.2d 818 [299 P.2d 243], went on to find the failure to advise of consequences harmless. (*Ronald E., supra,* at pp. 325-326.)

On at least two occasions since *Ronald E.,* our Supreme Court has reiterated the rule that a failure to advise the defendant of the specified constitutional rights he is waiving by a plea or admission of priors requires automatic reversal of that portion of the judgment resting on the plea or admission. (*In re Ibarra* (1983) 34 Cal.3d 277, 283, fn. 1 [193 Cal.Rptr. 538, 666 P.2d 980]; *People v. Wright* (1987) 43 Cal.3d 487, 493-494 [233 Cal.Rptr. 69, 729 P.2d 260]; see also *People v. Karis* (1988) 46 Cal.3d 612, 650-651 [250 Cal.Rptr. 659, 758 P.2d 1189] [applying harmless error analysis to misadvisement of consequences].) Several Court of Appeal decisions have also followed the rule established in *Yurko* and *Ronald E.* (See *People v. Johnson* (1989) 212 Cal.App.3d 1179, 1182 [261 Cal.Rptr. 159] ["Failure to advise and obtain a waiver of any of these rights is error reversible per se"]; *People v. English* (1981) 116 Cal.App.3d 361, 369 [172 Cal.Rptr. 122] [quoting language from *Ronald E.* on distinction between the advisement of rights and the advisement of consequences, and finding a defective advisement of consequences harmless]; *People v. Caban* (1983) 148 Cal.App.3d 706, 711-712 [196 Cal.Rptr. 177] [quoting *Ronald E.* but finding failure to advise on consequences prejudicial].)

In two cases, Court of Appeal panels have applied harmless error analysis where the defendant claimed he was advised neither of the rights he was waiving nor of the consequences of an admission. (*People v. Shippey* (1985) 168 Cal.App.3d 879, 889-890 [214 Cal.Rptr. 553]; *People v. Prado* (1982) 130 Cal.App.3d 669, 675-676 [182 Cal.Rptr. 129].) The two opinions cite *Ronald E.* and *English. Ronald E.,* however, makes clear that harmless error analysis applies only to failure to advise of consequences, not to failure to advise of rights; *English* explicitly recognized the distinction and applied harmless error analysis only to advisement of consequences. *Prado* and *Shippey* are inconsistent with *Yurko* and *Ronald E.*

The United States Supreme Court held in *Boykin* that a plea taken without on-the-record assurances that defendant was waiving his rights knowingly is "void" and the failure to make a record "reversible error." The California Supreme Court held in *Tahl* that such a plea "cannot stand," and in *Yurko* that a conviction resting on such a plea or admission "must be set aside." In *Ronald E., supra,* the high court held that failure to inform of the constitutional rights "renders a plea or admission involuntary and requires

that it be set aside." (19 Cal.3d at p. 321.) In *Ibarra, supra,* the court stated that a defendant who did not validly waive his constitutional rights was entitled to "automatic reversal" on direct appeal (34 Cal.3d at p. 283, fn. 1) and in *Wright, supra,* it repeated that the error was "per se reversible" (43 Cal.3d at p. 493). This explicit guidance from both Supreme Courts requires reversal.

The Attorney General relies on *People* v. *Guzman* (1988) 45 Cal.3d 915 [248 Cal.Rptr. 467, 755 P.2d 917], a death penalty case which also dealt briefly with an enhancement issue. The defendant had admitted two prior-prison-term-enhancement allegations, and contended that that portion of the judgment should be reversed because he was not advised before making the admission that he was entitled to a jury trial on the allegations. Instead, the trial court had told him he had a right to a "hearing" at which the allegations would have to be proved beyond a reasonable doubt. (*Id.,* at p. 968.) The Supreme Court concluded the deficient advisement was error under *Yurko,* but harmless. It was not reasonably probable that had the trial court advised him of his right to a " 'jury trial' " instead of merely a " 'hearing,' " he would have denied the priors and succeeded in having them found untrue. (*Ibid.*) The court cited *Prado, supra,* 130 Cal.App.3d 669, and *English, supra,* 116 Cal.App.3d 161, to support its conclusion.

We do not conclude that by its holding in *Guzman* the high court intended to depart from the federal mandate in *Boykin,* and to overrule its previous decisions in *Tahl, Yurko, Ronald E., Ibarra* and *Wright,* without any discussion of the point or any indication it had in mind what those precedents said as to the standard of prejudice. In *Guzman* the trial court had not completely omitted any of the three rights specified in *Tahl,* but had referred vaguely to the right to a " 'hearing' " rather than specifically to a " 'jury trial.' " We read *Guzman* as holding only that harmless error analysis may be used to assess the effect of advisements which are overly vague. Construed in that manner it has no application to the case at bar, in which the trial court neglected any mention at all of the right not to incriminate oneself.

Considerations of logical consistency and practical difficulty also militate against holding the constitutional variety of *Yurko* error subject to harmless error analysis. Such a holding would create an anomaly in that constitutional *Yurko* error would be potentially harmless, but constitutional *Boykin-Tahl* error would not be. The constitutional aspect of *Yurko* was based on the *Boykin-Tahl* principles. The *Yurko* court reasoned that the potential magnitude of punishment created by admission of prior convictions, as well as the rights waived, was the equivalent of those involved in pleading guilty to a substantive offense, and that trial courts must therefore exercise "a

comparable solicitude" in accepting such admissions. (10 Cal.3d at pp. 862-863.) No reason appears why the operation of the two rules should be different as to review of the error.

It is also questionable whether constitutional *Yurko* error, by its nature, allows for meaningful harmless error analysis. Where the error lies in misadvisement as to consequences—nonconstitutional *Yurko* error—an appellate court may be able to intelligently evaluate the importance the particular consequence might have had in the context of the defendant's potential sentence. (See, e.g., *People v. Caban, supra,* 148 Cal.App.3d at p. 712.) But we are not able to guess with similar intelligence what degree of importance a particular constitutional right would have for a particular defendant. It would be speculation to say, for example, that the defendant here would have admitted the allegations even if he had been informed he was waiving his constitutional protection against self-incrimination. Nor can we speculate that a particular defendant was aware of a right because of his experience with the criminal justice process or because of remarks made in court which might imply such a right. *Tahl* and *Yurko* require an express and specific showing on the record, and "mere inference, no matter how plausibly drawn from the evidence, does not suffice." (*People v. Levey* (1973) 8 Cal.3d 648, 653, fn. omitted [105 Cal.Rptr. 516, 504 P.2d 452]; *People v. Johnson, supra,* 77 Cal.App.3d at p. 876.) Harmless error analysis should not be used to nullify this mandate. It should also not be assumed that defendants will universally prefer admitting allegations of priors in order to keep them from making a prejudicial appearance before the jury. (See *People v. English, supra,* 116 Cal.App.3d at p. 370 [referring to the "well known tactical reasons for not submitting the issue of the truth of the priors to the jury"].) ■ Under California law a defendant is entitled to have the allegation of prior convictions tried separately, after his guilt on the substantive charge is determined. (*People v. Bracamonte* (1981) 119 Cal.App.3d 644, 654-655 [105 Cal.Rptr. 516, 504 P.2d 452]; see *People v. Golston* (1986) 188 Cal.App.3d 346, 351-352 [232 Cal.Rptr. 788] [*Bracamonte* rule survived Proposition 8].)

■ The acceptance of an uninformed admission of priors is an error which affects the composition of the record, making it difficult or impossible to determine what the likely result at trial would have been if a trial had been held. (See *Rose v. Clark* (1986) 478 U.S. 570, 579, fn. 7 [92 L.Ed.2d 460, 471, 106 S.Ct. 3101].) In the present case, for example, the Attorney General argues the error should be held harmless because "[a]ppellant did not dispute the truth of his priors at the time he admitted them or even at the time of his post-verdict motions; indeed, he does not dispute their truth even now." But Ray had no opportunity to dispute the priors at trial, precisely because he admitted them. Without being fully advised of the

constitutional meaning of the decision, he waived his rights to dispute the priors through a trial. On appeal, moreover, he is limited to the record which was thus truncated, and he would not be permitted to make an additional showing as to the truth or falsity of the allegations. The waiver of trial being invalid, appellate judges cannot cure the error by conducting a trial without evidence.

It may be that *Yurko* is due for reexamination. Perhaps it should not be presumed that a defendant asked to admit a prior, who has either had a trial on the substantive offense, is shortly to have such a trial or has just pled guilty after full advisement, is so ignorant of his basic trial rights as to render his admission involuntary if additional advisements are not made. It is also possible that for the overwhelming majority of defendants facing an enhancement for prior conviction, the only real concern is the length of time by which the prison term will be increased if the allegation is admitted or proved. Perhaps the full advisements mandated by *Yurko* are only a matter of form for most defendants, and reversal in cases such as the present one a waste of trial court time. Unless and until such questions are reexamined by our high court, however, intellectual honesty requires that we not subvert the clear mandate of *Yurko* by misapplying the rule of harmless error. At present the problem may be prevented by the trial courts, which should exercise care to ensure that these basic advisements and waivers are fully executed.

In obedience to a long line of decisions from the federal and state Supreme Courts, we conclude that constitutional *Yurko* error—the failure to obtain, on the record, knowing waivers of the constitutional trial rights before accepting a defendant's admission of prior convictions—is per se reversible error.

The judgment of conviction of attempted robbery is affirmed. That part of the judgment finding defendant used a deadly weapon in the commission of the robbery, and imposing an enhancement therefor, is modified to show that the enhancement is imposed under section 12022, subdivision (b). That part of the judgment finding true the allegations of prior conviction and imposing the corresponding enhancements is reversed. The cause is remanded for a limited new trial on the truth of the prior conviction allegations and for resentencing.

Haning, J., concurred.

**KING, J.**—I concur. Present law requires the result we reach, but common sense, waste of precious public resources, and restraint in imposing frivolous trials *on already overburdened* trial courts, cry out for the Supreme

Court to reexamine the law. Nowhere in the record,[1] the briefs, or at oral argument was the claim made that Ray's prior convictions were invalid. If there ever was harmless error, this is it. Yet a rule of per se reversal, even with absolutely no showing prejudicial error occurred, requires us to award a new trial to Ray because of a technical error. It is exactly this kind of decision which lessens public confidence in the judicial process.

The costs of transporting Ray from state prison to San Mateo County for trial, paying a lawyer to represent him, paying the costs of a jury trial and, undoubtedly, another appeal, constitute a gross waste of taxpayer dollars, since Ray makes no claim he could prevail upon a trial of the validity of his prior convictions. In addition to the needless financial cost, a heavily over-burdened district attorney and trial court will waste time on a frivolous claim which could be better spent reducing the backlog of serious criminal cases.

In my view, the California Supreme Court should reexamine existing law and adopt a rule that the error in issue here is deemed harmless unless the defendant can show prejudice.

Respondent's petition for review by the Supreme Court was denied August 30, 1990.

---

[1] At the time of entering the plea Ray's counsel acknowledged "there is a factual basis" for the prior convictions.