Filed 12/22/21  P. v. Ting CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B311125 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA253204) |
| v. | |
| SUNNY HSIAO SHIN TING, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Laura F. Priver, Judge.  Affirmed.

Brad Kaiserman, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and Michael Katz, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Sunny Hsiao Shin Ting (defendant) appeals from the summary denial of his petition for vacatur and resentencing pursuant to Penal Code section 1170.95.[1]  He contends that the trial court erred in denying the petition without first appointing counsel and permitting briefing. We agree there was error but find it harmless and affirm the order.

## BACKGROUND

In 2007, defendant was convicted of first degree murder and first degree robbery.  The jury found true that the murder was committed during the commission of a robbery within the meaning of section 190.2, subdivision (a)(17).  The jury also found true several firearm enhancement allegations, including that defendant personally used a firearm within the meaning of section 12022.5, subdivision (a).  The trial court sentenced defendant to life in prison without the possibility of parole, plus four years.  In 2009, we reversed the robbery conviction and remanded for a finding regarding the statute of limitations, but otherwise affirmed the judgment in *People v. Ting* (Sept. 15, 2009, B209911) (nonpub. opn.) (*Ting I*).[2]

---

[1]     All further statutory references are to the Penal Code, unless otherwise indicated.

[2]     We have granted defendant's request to take judicial notice of the appellate record in that appeal.  The result on remand is not included in the record but that does not affect the issues presented here.

The evidence at trial summarized in *Ting I* shows that in August 1992, when defendant was the leader of the Wah Ching gang, he and another gang member (Kenny) tried to carjack an unlicensed taxi driven by victim Lee, who was using his own car. Defendant struggled with Lee while in the front passenger seat. When Lee fought back defendant accidentally shot himself in the leg. Kenny then shot Lee in the back of the head from the rear seat. A witness saw defendant get out of the car with a gun dangling from his finger. Kenny pulled Lee's body out of the car and drove defendant home in Lee's car. (*Ting I, supra*, B209911.)

Defendant's girlfriend took him to the hospital where he was treated for his gunshot wound. Defendant told the police and hospital staff that he had been robbed and shot while sitting in the passenger side of his girlfriend's car. Police officers inspected her car but found no blood. The next day Sheriff's deputies found Lee's burning car with a nine-millimeter shell casing on the rear floorboard. Two former members of defendant's gang told police that defendant had told them that while he and Kenny were trying to carjack Lee, defendant accidentally shot himself with his own gun when Lee fought back. Kenny then shot Lee in the back of the head. One of the former gang members testified that defendant said he got shot while he and Kenny were trying to get a car to use for robberies. (*Ting I, supra*, B209911.)

A member of defendant's gang (Yu) testified that after he, defendant, Kenny, and three other gang members met at defendant's apartment to plan a jewelry store robbery, defendant and Kenny left to get a car to use in the robbery. Both were armed with handguns. Two or three hours later they returned, and both told Yu that Kenny had accidentally shot defendant. At

the hospital defendant told Yu that Kenny had pulled a gun on Lee, and during the ensuing struggle Kenny shot defendant in the leg. Kenny then shot Lee in the head. (*Ting I, supra*, B209911.)

Defendant testified that he did not carjack Lee or intend to steal a car to commit robberies. Rather that he sold guns to Korean store owners, and when Kenny told defendant that he owed Lee money and Lee was interested in buying guns, Kenny arranged a meeting among the three of them. The meeting took place in Lee's car with defendant in the front passenger seat and Kenny in the rear. Defendant denied having a gun. Lee and Kenny spoke in Korean, which defendant did not understand. When the two men began arguing, Lee stopped the car and pulled out a gun. Defendant grabbed the barrel of the gun, struggled with Lee, and the gun went off, hitting defendant in the leg. Defendant then heard a shot and saw Lee slumped over the steering wheel. He realized that Kenny had shot Lee. He picked up Lee's gun by his fingertips so he would not get fingerprints on it. Kenny pulled Lee's body out of the car, drove defendant home in Lee's car, and defendant's girlfriend drove him to the hospital. (*Ting I, supra*, B209911.)

Lee's wife testified that Lee had never owned a gun, that she did not recognize Kenny by his photograph, and that Lee had not lent money to Kenny. (*Ting I, supra*, B209911.)

In January 2021, defendant filed a petition for resentencing in the trial court pursuant to section 1170.95. On February 1, 2021, the trial court summarily denied the petition based solely upon its review of the record of conviction including the appellate opinion in *Ting I.* The court found that defendant did not qualify for relief under section 1170.95 because the recently amended

4

section 189, subdivision (e) did not change the law relating to actual killers or direct aiders and abettors, and because the true finding on the robbery-murder special circumstance showed that the jury believed defendant harbored direct or implied malice. The trial court also found from its review of the facts summarized in the appellate opinion that defendant was a major participant and direct aider and abettor.

Defendant filed a timely notice of appeal from the order.

## DISCUSSION

Defendant contends that the trial court erred in summarily denying his petition, arguing that the court should not have looked to the record of conviction to determine whether he had made a prima facie showing, but instead have determined the issue solely from the allegations of his section 1170.95 petition, which were facially sufficient. The court also should have appointed counsel. Defendant further contends that the summary denial must be reversed because the trial court erroneously made findings of fact based on the record of conviction without issuing an order to show cause.

After defendant's conviction, Senate Bill No. 1437 amended the laws pertaining to felony murder or murder under the natural and probable consequences doctrine, "'to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' (Stats. 2018, ch. 1015, § 1, subd. (f).)" (*People v. Gentile* (2020) 10 Cal.5th 830, 842.) Senate Bill No. 1437 also enacted section 1170.95, which gives defendants previously convicted of murder under those theories a procedure

to obtain vacatur and resentencing under the following conditions: (1) "[a] complaint, information, or indictment was filed against [him] that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine," (2) he "was convicted of first degree or second degree murder following a trial," and (3) he "could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (a).)

Upon the filing of a petition alleging all the enumerated conditions for relief under section 1170.95, the statute requires the trial court to take the allegations as true, appoint counsel if requested, and entertain briefing, regardless of whether the record of conviction demonstrates that the defendant is not entitled to relief. (*People v. Lewis* (2021) 11 Cal.5th 952, 957, 962-963, 971-972 (*Lewis*); see § 1170.95, subds. (b), (c).) After the appointment of counsel and considering the parties' briefs, the court may review the record of conviction to determine the truth of the allegations of the petition and to aid the court in assessing whether a petitioner has made a prima facie showing. (*Lewis*, at pp. 957, 972.) If not, the petition may be summarily denied. If so, the court must issue an order to show cause and schedule a hearing. (*Ibid*.) At the show cause hearing the prosecution bears the burden of proving beyond a reasonable doubt that the petitioner is ineligible for section 1170.95 relief. (§ 1170.95, subd. (d)(1) & (3).)

Defendant's petition set forth the required averments and included a request for the appointment of counsel. The petition was thus facially compliant, and it should not have been summarily denied. (See *Lewis, supra*, 11 Cal.5th at pp. 957, 960-

6

961.) Further, if the court engaged in factfinding, it should not have done so. "In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.'" (*Id.* at p. 972.)[3]

Error in denying a facially sufficient petition without the appointment of counsel and the opportunity for briefing is tested for prejudice under the standard of *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*). (*Lewis, supra*, 11 Cal.5th at pp. 957-958.) Under that test, it is defendant's "burden to demonstrate a reasonable probability that 'his petition would not have been summarily denied without an evidentiary hearing' had the trial court appointed counsel for him." (*People v. Daniel* (2020) 57 Cal.App.5th 666, 678.) Defendant acknowledges that under that standard he must demonstrate a reasonable probability that if he had been afforded assistance of counsel the trial court would have issued an order to show cause. (See *Lewis*, at pp. 974-975.)[4]

---

[3] Citing *People v. Fortman* (2021) 64 Cal.App.5th 217, review granted July 21, 2021, S269228, and *People v. Duke* (Sept. 28, 2020, B300430) (opn. ordered nonpub. Nov. 23, 2021), defendant argues not only that the trial court should not have engaged in factfinding, but in doing so erred by applying the wrong standard. We agree with the People that the standard under which the trial court may have erroneously engaged in factfinding is irrelevant.

[4] Defendant disagrees with *Lewis* and argues that the test of prejudice should be that for federal constitutional error as set forth in *Chapman v. California* (1967) 386 U.S. 18, 24. However, citing *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455, defendant recognizes that *Lewis* is binding on this court. Not only is *Lewis* binding, but we agree with its holding.

Once counsel has been appointed and has had the opportunity to file a brief, it is then appropriate for the trial court to review the record of conviction to assist it in assessing whether defendant has made a prima facie showing of eligibility under section 1170.95. (*Lewis, supra*, at pp. 957, 971-972.) Thus, it is defendant's burden to show a reasonable probability that he would have demonstrated a prima facie showing of eligibility for relief under the statute.

Section 190.2, subdivision (d) provides that an aider and abettor of a felony in subdivision (a)(17) of that statute (including robbery) that results in the death of a person shall be punished by death or life imprisonment without the possibility of parole if the aider and abettor acted with reckless indifference to human life and as a major participant in the felony. These requirements of section 190.2 were not enacted as an amendment under Senate Bill No. 1437, but first appeared in Proposition 115, approved June 5, 1990, and effective June 6, 1990, long before defendant's jury convicted him and found true the section 190.2 special circumstance. Senate Bill No. 1437 amended section 189 by adding elements to the crime of felony murder identical to the existing requirements for finding true a section 190.2 felony-murder special circumstance. The amendment did not change the elements of the felony-murder special circumstance, and the jury's true finding shows that defendant acted as a major

---

The procedure the trial court was required to follow was purely statutory, and the applicable standard for state procedural error is the *Watson* standard. (See *People v. Golston* (1986) 188 Cal.App.3d 346, 354, citing *Chapman v. California*, at p. 21.)

8

participant in the felony with reckless disregard for human life. It cannot now be said that defendant could not be convicted of murder "because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (a)(3).) Defendant is thus unable as a matter of law to make a prima facie showing of eligibility for relief under the amended statutes. (See *People v. Nunez* (2020) 57 Cal.App.5th 78, 82 (*Nunez*), review granted Jan. 13, 2021, S265918.)

Defendant asserts that he was prejudiced because appointed counsel could have been able to make a prima facie showing with a comprehensive analysis of this case in relation to the decisions of the California Supreme Court in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*), and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*), which were published after he was convicted, and which clarified the factors the jury should consider in determining reckless indifference. Then, defendant argues, there would be a reasonable probability that after a full hearing and consideration of argument from counsel the trial court would find he did not act with reckless disregard.

We have previously held that a jury's findings that the defendant was a major participant who acted with reckless disregard for human life may not be relitigated in a section 1170.95 proceeding. (*Nunez, supra*, 57 Cal.App.5th at pp. 82-84, review granted.) We have agreed with other appellate courts that a section 1170.95 petition is not the vehicle for a person convicted prior to *Banks, supra*, 61 Cal.4th 788 and *Clark, supra*, 63 Cal.4th 522 to challenge a felony-murder special circumstance, which must first be challenged by way of habeas corpus or other available collateral attack. (*Nunez, supra*, at p. 83, citing *People v. Allison* (2020) 55 Cal.App.5th 449, 458, 461, *People v. Murillo*

9

(2020) 54 Cal.App.5th 160, 168, review granted Nov. 18, 2020, S264978, *People v. Galvan* (2020) 52 Cal.App.5th 1134, 1142, review granted Oct. 14, 2020, S264284, and *People v. Gomez* (2020) 52 Cal.App.5th 1, 16-17, review granted Oct. 14, 2020, S264033; accord, *People v. Simmons* (2021) 65 Cal.App.5th 739, 746-750, review granted Sept. 1, 2021, S270048; *People v. Jones* (2020) 56 Cal.App.5th 474, 479-482, review granted Jan. 27, 2021, S265854.)

Defendant asks that we reconsider our decision in *Nunez*, review granted, and points out that the authority on this issue is split, with some courts taking the view that those convicted prior to the *Banks* and *Clark* decisions may challenge a felony-murder special circumstance in a section 1170.95 proceeding. (See, e.g., *People v. Arias* (2021) 66 Cal.App.5th 987, 1004, review granted Sept. 29, 2021, S270555; *People v. Gonzalez* (2021) 65 Cal.App.5th 420, 425, review granted Aug. 18, 2021, S269792; *People v. Harris* (2021) 60 Cal.App.5th 939, 956-958, review granted Apr. 28, 2021, S267802; *People v. York* (2020) 54 Cal.App.5th 250, 259-261, review granted Nov. 18, 2020, S264954; *People v. Smith* (2020) 49 Cal.App.5th 85, 93-94, review granted July 22, 2020, S262835; *People v. Torres* (2020) 46 Cal.App.5th 1168, 1179-1180, review granted June 24, 2020, S262011.) Resolution of the issue is now before the California Supreme Court in *People v. Strong* (Dec. 18, 2020, C091162) (nonpub. opn.), review granted March 10, 2021, S266606.

Defendant asserts that *Banks* and *Clark* effected a change in the law and thus the definitions of "major participant" and "reckless indifference to human life" have changed since his conviction. Quoting *People v. Torres, supra*, 46 Cal.App.5th at pages 1179-1180, review granted, defendant argues that the

change in law occurred because "*Banks* and *Clark* construed the terms 'major participant' and 'reckless indifference to human life,' as set forth in section 190.2, subdivision (d), 'in a significantly different, and narrower manner than courts had previously construed the statute.'"

We do not agree that *Banks* and *Clark* stated a new rule of law or changed the definitions of "major participant" and "reckless indifference to human life." As we explained in *Nunez*, "the high court in those cases 'merely clarified the "major participant" and "reckless indifference to human life" principles that existed when defendant's conviction became final.'" (*Nunez, supra*, 57 Cal.App.5th at p. 92, review granted.) Further, "our Supreme Court has not required that juries be instructed on the clarifications . . . and '*Clark* "did not hold that the court has a sua sponte duty to instruct on those [*Banks*] factors."'" (*Id.* at pp. 92-93, citations omitted and quoting *People v. Allison, supra*, 55 Cal.App.5th at pp. 458-459.)

As section 1170.95 applies to those who could not have been convicted of murder under the amended murder statutes and does not mention judicial clarification, we decline defendant's invitation to reconsider our decision in *Nunez*. Moreover, even if we agreed with those cases, which hold that a pre-*Banks* and *Clark* special circumstance finding under section 190.2, subdivision (a)(17) would not preclude defendant from making a prima facie showing, defendant does not demonstrate a reasonable probability that counsel could have done so.

Some courts hold it is error to deny a section 1170.95 petition solely on the basis of the pre-*Banks* and *Clark* felony-murder special circumstance, and that the reviewing court may independently review the appellate record to determine whether

11

defendant can make a prima facie showing, if the record is adequate.  (*People v. Secrease* (2021) 63 Cal.App.5th 231, 236, 247, 255, review granted June 30, 2021, S268862; *People v. Law* (2020) 48 Cal.App.5th 811, 822, 825-826, review granted July 8, 2020, S262490; see *People v. Pineda* (2021) 66 Cal.App.5th 792, 795-796, review granted Sept. 29, 2021, S270513.)  Such a review may also be undertaken to determine prejudice due to an erroneous denial of the petition; and if the special circumstance finding was supported by substantial evidence, the error is harmless.  (See *People v. Law*, at pp. 825-826.)

Defendant contends that the prejudice in this case is demonstrated by the error itself:  the absence of counsel and a full hearing to argue why the special circumstance finding does not preclude relief as a matter of law.  And he argues that a review of the evidence by this court would amount to prohibited factfinding and weighing the evidence.  We disagree.  We would not be making our own determination that defendant did or did not act with reckless indifference, as defendant suggests.  We review the record of conviction solely to determine whether substantial evidence supports the jury's true finding.  (See *People v. Secrease*, *supra*, 63 Cal.App.5th at p. 255, review granted; *People v. Law, supra*, 48 Cal.App.5th at pp. 825-826, review granted.)  We find the factual summary of the appellate opinion in *Ting I* adequate to undertake such a harmless error analysis.

In *Banks*, the California Supreme Court explained that a "major participant" in a robbery is someone whose "personal involvement" is "substantial" (*Banks*, *supra*, 61 Cal.4th at p. 802); and such a participant "need not be the ringleader" (*People v. Williams* (2015) 61 Cal.4th 1244, 1281), but his involvement must be "greater than the actions of an ordinary aider and abettor"

12

(*Banks*, at p. 802).  A defendant acts with reckless indifference to human life when he """"knowingly engag[es] in criminal activities known to carry a grave risk of death."""" (*Id.* at p. 801, quoting *People v. Estrada* (1995) 11 Cal.4th 568, 577, quoting *Tison v. Arizona* (1987) 481 U.S. 137, 157.)  This standard "has a subjective and an objective" component.  (*In re Scoggins* (2020) 9 Cal.5th 667, 677 (*Scoggins*).)  To satisfy the subjective component, "'[t]he defendant must be aware of and willingly involved in the violent manner in which the [underlying felony] is committed,' and . . . must consciously disregard 'the significant risk of death his or her actions create.'" (*Ibid.*, quoting *Banks*, at p. 801.)  The key is whether the defendant evinces "a willingness to kill (or to assist another in killing) to achieve a distinct aim, even if the defendant does not specifically desire that death as the outcome of his actions."  (*Clark*, *supra*, 63 Cal.4th at p. 617.)  To satisfy the objective component, the risk of death """"must be of such a nature and degree that, considering the nature and purpose of the [defendant's] conduct and the circumstances known to him . . . , its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the [defendant's] situation."""" (*Scoggins*, at p. 677, quoting *Clark*, at p. 617.)

*Banks* and *Clark* held that the totality of the circumstances should be examined when evaluating the extent of participation and suggested several relevant but not dispositive factors to consider:  (1) "Did the defendant use or know that a gun would be used during the [underlying] felony," and "[h]ow many weapons were ultimately used?"; (2) "Was the defendant physically present at the crime," such that he had "the opportunity to restrain the crime or aid the victim?"; (3) "What was the duration of the

13

interaction between the perpetrators of the [underlying] felony and the victims?"; (4) "What was the defendant's knowledge of his . . . confederate's propensity for violence or likelihood of using lethal force?"; and (5) "What efforts did the defendant make to minimize the risks of violence during the felony?" (*Scoggins, supra*, 9 Cal.5th at p. 677, citing *Clark, supra*, 63 Cal.4th at pp. 618-623; see *Banks, supra*, 61 Cal.4th at p. 803; *Clark, supra*, at p. 611.)

The appellate opinion in this case sets forth substantial evidence that supports the jury's finding that defendant was a major participant who acted with reckless indifference to life when reviewed under the clarifying factors suggested in *Banks* and *Clark*. The evidence summarized in the opinion shows that defendant had a major role in planning the crime and was a major participant in its commission. He was the leader of his gang and met with Kenny and four other members of the gang to plan a robbery and then left with Kenny "to get a car" to use in the robbery. Defendant and Kenny were both armed with handguns, and as others present for the planning of the robbery knew they were both armed, it is reasonable to infer that defendant knew Kenny was armed. Defendant, who sold guns to store owners, was no doubt familiar with guns and the danger they posed, yet he entered Lee's car intending to commit an armed carjacking. It does not appear that defendant made any effort to minimize the risks of violence during the felony as he physically struggled with Lee in close quarters while armed, with

14

his armed accomplice within two or three feet.[5]  If Kenny's violent reaction to the accidental shooting of defendant was too quick to allow defendant to prevent the murder, he still could have come to the victim's aid as he could still walk and move about, but he did not.  Instead, after Kenny removed Lee's body, defendant got into the car and went home.

Defendant asserts that "there was nothing in the plan of the carjacking that pointed to an elevated risk to human life beyond those risks inherent in any armed carjacking."  In addition, citing the discussion in *Clark, supra*, 63 Cal.4th at page 620 of some of the factors indicating reckless indifference as they related to the defendant in that case, defendant argues that the evidence in this case was insufficient because the encounter with Lee was not of long duration, there was no evidence that defendant knew Kenny was armed or knew of his propensity for violence, defendant had no opportunity to interfere because Kenny fired quickly in response to defendant's accidentally shooting himself, and the mere fact of being armed and knowing Kenny was armed does not prove reckless indifference. Defendant asserts that his crime was comparable to the "garden-variety armed robbery" as the expression was used in *Banks, supra*, 61 Cal.4th at page 802 and *Clark, supra*, 63 Cal.4th at page 617, footnote 74.  Defendant concludes that this was a "garden-variety armed carjacking."

---

[5]     Defendant asserts that because witnesses heard arguing prior to the gunfire, this "indicates that efforts were made to complete the carjacking without resorting to violence." Defendant points to no evidence of who was arguing or what the argument was about.  Defendant's assertion is speculative.

As our high court explained in *Banks*, the expression "garden-variety armed robbery" meant one where death might be possible but not probable, not one where the defendant was "actively involved in every element of the [crime]" or "physically present during the entire sequence of criminal activity culminating in the murder. . . ." (*Banks*, *supra*, 61 Cal.4th at p. 802, comparing *Tison v. Arizona, supra*, 481 U.S. 137 with *Enmund v. Florida* (1982) 458 U.S. 782.) In *Clark*, the court explained that "a robbery in which the only factor supporting reckless indifference to human life is the fact of the use of a gun is what we meant by 'a garden-variety armed robbery' in *Banks* . . . ." (*Clark, supra*, 63 Cal.4th at p. 617, fn. 74.) Here defendant did not merely use a gun.

The evidence summarized in the opinion does not support two of the factors cited by defendant: the crime was not of long duration and the evidence did not show that defendant knew of Kenny's propensity for violence. This, however, does not show that the jury's finding is unsupported by substantial evidence as not all factors must be established. (See *Banks, supra*, 61 Cal.4th at p. 803.) "'[N]o one of these considerations is necessary, nor is any one of them necessarily sufficient.'" (*Clark, supra*, 63 Cal.4th at p. 618, quoting *Banks, supra*, at p. 803.) What matters is the totality of the considerations. (*Scoggins, supra*, 9 Cal.5th at p. 677.) It follows that substantial evidence is not lacking simply because the evidence did not support every one of the suggested factors. Here, the totality of the circumstances shows that defendant was armed, knew his accomplice was armed, and was present and active "'during the entire sequence of criminal activity culminating in the murder.'" (*Banks, supra*, at p. 802.)

16

Defendant's arguments appear to suggest that we should find prejudice only if we independently determine beyond a reasonable doubt that he acted with reckless disregard for life. However, that is a determination for the trial court only after defendant makes a prima facie showing of eligibility. Here, the special circumstance finding precludes that showing as a matter of law. (*Nunez, supra*, 57 Cal.App.5th at p. 82, review granted.) "If as a matter of law the record of conviction shows [as here] that the defendant was a major participant who acted with reckless indifference to human life, and the defendant does not claim he has new evidence to present, he has not made a prima facie case." (*People v. Murillo, supra*, 54 Cal.App.5th at p. 173, review granted.) As defendant does not claim to have any new evidence on this issue, he has failed to demonstrate a reasonable probability that he would be able to make a prima facie showing of eligibility under the guidelines of *Banks* and *Clark*.

Defendant's remedy is to first challenge the special circumstance finding by way of a petition for writ of habeas corpus, and if successful, to petition on that basis for section 1170.95 relief.[6] Until then, the special circumstance stands, and it demonstrates that because defendant cannot make a prima facie showing of eligibility under the statute, there is no

---

[6] As the People note defendant filed a petition for writ of habeas corpus in this court in *In re Ting* (B296745), challenging the special circumstance finding, which we summarily denied on February 11, 2021. "[T]he summary denial of a habeas corpus petition does not establish law of the case and does not have a res judicata effect in future proceedings." (*Gomez v. Superior Court* (2012) 54 Cal.4th 293, 305, fn. 6.)

17

reasonable probability of a different result.  We conclude that any error in summarily denying the petition is harmless.

## DISPOSITION

The order denying the petition is affirmed.


                                   _____

                                         CHAVEZ, J.

I concur:


_____

HOFFSTADT, J.

18

*People v. Ting*, B311125
ASHMANN-GERST, J., Concurring in the judgment.

I agree with the majority that the trial court properly denied defendant Sunny Hsiao Shin Ting's petition for resentencing under Penal Code section 1170.95.[1]  In finding the special circumstance (§ 190.2, subd. (a)(17)) true, the jury necessarily found either that defendant was an aider and abettor who harbored an intent to kill or a major participant who acted with reckless indifference to human life, findings that would make him guilty of murder under the amended law.  (See §§ 189, subd. (e)(3), 1170.95, subd. (a).)  Either finding makes defendant ineligible as a matter of law.  (*People v. Farfan* (2021) 2021 Cal.App.LEXIS 973, *16 (Ct. App., Second Dist., Div. Two) ["the jury's true finding on the special circumstance establishes appellant is ineligible for section 1170.95 relief as a matter of law"]; *People v. Jones* (2020) 56 Cal.App.5th 474, 482, review granted Jan. 27, 2021, S265854; *People v. Allison* (2020) 55 Cal.App.5th 449, 457; *People v. Gomez* (2020) 52 Cal.App.5th 1, 14–17, review granted Oct. 14, 2020, S264033; *People v. Galvan* (2020) 52 Cal.App.5th 1134, 1141–1143, review granted Oct. 14, 2020, S264284; but see *People v. Torres* (2020) 46 Cal.App.5th 1168, 1179–1180, review granted June 24, 2020, S262011; *People v. Smith* (2020) 49 Cal.App.5th 85, 93–94, review granted July 22, 2020, S262835; *People v. York* (2020) 54 Cal.App.5th 250, 258–263, review granted Nov. 18, 2020, S264954; *People v. Harris* (2021) 60 Cal.App.5th 939, 956–958, review granted Apr. 28,

---

[1]     All further statutory references are to the Penal Code unless otherwise indicated.

2021, S267802; *People v. Secrease* (2021) 63 Cal.App.5th 231, 236, 247, review granted June 30, 2021, S268862.)

And, the jury's special circumstance finding is supported by substantial evidence through the prism of *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*). (*People v. Secrease, supra*, 63 Cal.App.5th at p. 255.) In assessing whether substantial evidence supports a finding, we view the record in the light most favorable to that finding. (*People v. Albillar* (2010) 51 Cal.4th 47, 60.) That evaluation leads to the conclusion that the jury's finding must stand—defendant was either a major participant who acted with reckless indifference to human life or an aider and abettor who harbored intent to kill.

As summarized in our prior opinion, defendant was an active participant in the crime. He and another gang member, Kenny Lee (Kenny) tried to carjack an unlicensed taxi driven by the victim, In Jik Lee (Lee). Defendant was in the taxi when Kenny shot and killed Lee. A witness saw defendant exit the car with a gun dangling from his finger. Two former members of defendant's gang told police that defendant had told them that he and Kenny were trying to carjack the victim, and that Kenny shot and killed Lee. (*People v. Ting* (Sept. 15, 2009, B209911) [nonpub. opn.], at pp. 2–5.) This evidence overwhelmingly demonstrates, even under the heightened standard set forth in *Banks* and *Clark*, that defendant was either an aider and abettor who acted with intent to kill or a major participant in the crimes who acted with reckless indifference to human life. Thus, relief under section 1170.95 is unavailable as a matter of law.

Pursuant to my concurring opinion in *People v. Nunez* (2020) 57 Cal.App.5th 78, 97–99, review granted

2

January 13, 2021, S265918, I do not join in the majority's conclusion that the jury's finding "must first be challenged by way of habeas corpus or other available collateral attack." (Maj. Opn., at p. 9.)

_____
ASHMANN-GERST, Acting P.J.

3